This appeal evolves from the Chancery Court of Scott County wherein J.C. and N.C.[1], appellants, sought to adopt an infant child born November 21, 1980, and placed in their home on January 8, 1981, by the Scott County Welfare Department pursuant to a placement contract for foster care. After obtaining a surrender of parental rights and consent to adoption from the natural parents while both were incarcerated in jail, the Scott County Welfare Department sought to place the child with D.E.S. and J.A.S., intervenors, as prospective adoptive parents. From a decree dismissing their petition for adoption, the appellants appeal. We reverse.
In November of 1980, several reports from various citizens were received by the Scott County Welfare Department concerning the neglect of eight minor children, one of whom is the child involved in this proceeding. After several investigations into the home were conducted, the Scott County Welfare Department petitioned and obtained temporary custody of the children on January 8, 1981. Seven of the children were placed in emergency shelters while the youngest child, born November 21, 1980, was placed with the appellants who were licensed as a foster care home. Three other children resided with the appellants at this time under foster care. At the same time these children were picked up by the welfare department, the natural mother was arrested and placed in jail on charges of food stamp fraud. The natural father was also arrested and placed in jail on charges *Page 530 
of grand larceny and auto theft when he tried to post bond for his wife's release.
When the infant was placed with the appellants, it was in dire need of medical attention. The child was subsequently hospitalized where she remained for about five days.
On January 13, 1981, the welfare department obtained a surrender of parental rights and consent to adoption on all eight children from the natural mother while she was still incarcerated. Employees of the department who obtained the release, asserted the natural mother did so of her own free will, without any threats, promises, coercion or duress, and only after the same had been read and fully explained to the mother. The natural mother, who had limited education, denied this.
The welfare department also obtained a surrender of parental rights and consent to adoption on all eight children from the natural father on January 20, 1981, while he remained incarcerated. The employees of the department asserted the same procedure was followed with the father as with the mother and his signature was obtained of his own free will without threats, promises, coercion or duress. The father, who had no education, asserted he was promised to be released from jail upon signing the documents. Both parents testified they signed the papers conditioned upon the infant child remaining with the appellants.
Although the appellants were not licensed as a prospective adoption home, they believed that if the baby came up for adoption, they would have the first option of adopting the child. The appellants stated they would not have taken the child in the first place had they not been promised by employees of the welfare department that they would be able to adopt. Although employees of the welfare department denied representing to the appellants they would be considered as adoptive parents if the chance arose, Pat Dilley admitted she discussed adoption with the appellants. Mrs. Dilley also told the appellants she saw no problem with obtaining a license for their home as a prospective adoption home since it had already been licensed as a foster care home. These representations were made at the same time the appellants were discussing their desire to adopt the infant child.
The appellants subsequently obtained a consent to adopt in their favor from both natural parents when it was discovered the child was going to be taken from their custody and placed in a prospective adoption home. Thereafter, they filed a petition for adoption of the child with the Chancery Court of Scott County. The natural parents entered a waiver of process and entry of appearance consenting to the adoption by the appellants. The welfare department denied that the appellants were entitled to adopt the child, urging that surrender of parental rights and consent to adopt executed by the natural parents were irrevocable and the foster care agreement under which the child was placed in their home precluded adoption by the appellants. The intervenors, who had been approved by the welfare department as a prospective adoptive home in 1976, and petitioned the Marion County Chancery Court for adoption of the child subsequent to the appellants' petition, were allowed to intervene. The chancellor dismissed the appellants' petition, finding the surrender of parental rights and consent to adoption executed in favor of the welfare department irrevocable and the agreement under which the child was placed in the appellants' home prevented adoption of the child by the appellants.
The chancellor, in his finding of facts, stated:
 This Court is aware of the attachment that in all probability came into existence between the [appellants] and this child but this Court is bound by law to uphold the agreements and covenants that the [natural parents] made with the Welfare Department on January 8, 1981, and the few days following. The Court is also aware of the desire of the [appellants] to adopt this child and also of the feeling that apparently exists among their friends and acquaintances in seeing that *Page 531 
they are permitted to perfect this adoption; but here again, this Court feels and so finds that it is duty bound under the provisions of the law and must and does dismiss all personal consideration of any and all political influence and political pressures so that the law can and must be upheld. The [appellants] have the child in this action solely as a foster care placement and not for the purpose of adoption.
The chancellor evidently excluded the appellants from consideration as adoptive parents based on the following provision embodied in the "contract for designation of Foster Home" to which the appellants were a party:
 We understand that the actual permanent legal custody of children placed in our home for Foster Care will remain in either the natural parent or parents of the child or the Department according to the facts of the individual case, and that by placing a child in our home for foster care, the Department does not confer any right to custody in us, and we hereby expressly waive any right to custody of a child placed in our home for Foster Care and expressly agree that we will not attempt to adopt any child placed in our home for Foster Care unless the child is made free for adoption by the written decision and action of the State Department of Public Welfare.
The paramount concern in cases where custody of a child is involved is the child's best interest. In the early case ofFoster and Wife v. Alston, 7 Miss. 406 (1842), this Court held:
 The law has given to our courts the most unbounded jurisdiction over minors. Fathers may be preferred to mothers — mothers to fathers — relatives to parents — or strangers to either, for the custody and care of minors, where the interests of the child require its exercise. Rev.Code, p. 64, 401, c. (7 Miss. at 457)
This rule has since remained in full force and effect in this jurisdiction and was recently reaffirmed in Bloodworth v.Bloodworth, No. 53,033, decided February 17, 1982, not yet reported.
In our opinion, prospective adoption homes and foster care homes are not mutually exclusive. Carolyn S. Townes, Administrator of the Foster Care Section of the Welfare Department, testified that children had been placed in foster homes and later adopted by that home where the child was free for adoption and had remained with the foster home for many years, creating an emotional bond with the foster parents. Although Mrs. Townes knew of no cases where this had been done with an infant child, she asserted each situation was dealt with on a case-by-case basis. Pat Dilley also testified that being licensed as a foster home was definitely an advantage to becoming a licensed adoptive home.
The chancery courts may order an investigation as to whether the prospective adopting parents are suitable for the child; however, such reports are certainly not conclusive on the courts if deemed not to be in the child's best interest. See Miss. Code Ann. § 93-17-11 (1972). Stability of environment is certainly an important aspect of the welfare of the child. Clark's Law of Domestic Relations § 18.4 (1968). The legislature has also recognized the importance of ties between prospective adopting parents and children by allowing the chancery court to waive an interlocutory decree in adoption proceedings where the child has previously resided with the adopting parents. Miss. Code Ann. § 93-17-13 (1972).
The chancellor in the case sub judice compounded the problem by granting this appeal with supersedeas. The infant child is now approximately fifteen months old. The child has resided with the appellants since it was about seven weeks old. During this period there can be no doubt that the child has become emotionally attached to the appellants. A severance of this relationship during this very important and impressionable age may not be in the child's best interest.
It is our opinion that the chancellor was manifestly in error when he excluded the appellants from consideration as adoptive *Page 532 
parents. The primary concern must be the child's best interest. Therefore, we reverse and remand this cause for a new trial.
REVERSED AND REMANDED.
SMITH, P.J., and WALKER, BOWLING and HAWKINS, JJ., concur.
PATTERSON, C.J., SUGG, P.J., and BROOM, J., dissent.
ROY NOBLE LEE, J., took no part.
[1] Pursuant to Mississippi Code Annotated sections 93-17-25,93-17-29 and 93-17-31 (1972), the names of the parties involved in this proceeding have been deleted and their initials substituted for confidentiality.