**Malvin CRIM, Jr., et al., Plaintiffs,**

v.

**Rose D. HARRISON, et al., Defendants.**

**No. DC 81–44–WK–O.**

United States District Court,
N.D. Mississippi,
Delta Division.

Dec. 13, 1982.

**38**

Christian T. Goeldner, Southaven, Miss., for plaintiffs.

Jim R. Bruce, Jackson, Miss., for defendants Harrison, Gale, Turbeville, Hutson, Townsend, Tollison, Voorhees and Markham.

William W. Ballard, Hernando, Miss., for Genia Mauney.

Orma R. Smith, Jr., Corinth, Miss., for Rose D. Harrison.

## MEMORANDUM ORDER

KEADY, District Judge.

In this action brought under 42 U.S.C. § 1983, plaintiffs Malvin and Nancy Crim and their adopted daughter May Lou sue various officials of the Mississippi Department of Public Welfare and the DeSoto County, Mississippi, sheriff's department for each defendant's part in the removal of Sharon Lynn Thomas (the Crims' foster child) from the Crim household and the refusal to allow the adoption of Sharon Lynn by the Crims. On July 8, 1981, this court denied defendants' motion to dismiss for failure to state a claim since the case was not found to be in a posture for determining whether plaintiffs had a legitimate liberty interest by virtue of the foster parent-foster child relationship. Following months of discovery, all defendants now move to dismiss or in the alternative for summary judgment. The court has previously granted summary judgment in favor of Marsh and Deidre Pickett.

## I. FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to plaintiffs, as required by Rule 56 of the Federal Rules of Civil Procedure, the undisputed material facts of the case are as follows. Plaintiffs Malvin and Nancy Crim were licensed by the DeSoto County Public Welfare Department as foster parents. Pursuant to this license, plaintiffs received placement of Sharon Lynn Thomas, aged two at the time, and her half-sister Mary Lou Reisinger, at that time aged eleven, as foster children. Mary Lou had on an earlier occasion been placed in the Crim home as a foster child but had subsequently been returned to her natural parents.

On June 13, 1980, defendant Jere Gale, DeSoto County Welfare Director, notified plaintiffs of the decision to remove Sharon Lynn from their home. Plaintiffs requested a local hearing to challenge the administrative decision. This hearing was held on June 23, 1980. On the same day, Sharon Lynn was taken by defendants Tollison and Mauney from the home of plaintiffs' baby sitter and placed with Marsh and Deidre Pickett, another licensed foster family.

Plaintiffs received notice of the local hearing decision on June 25, 1980, and because it was adverse to their interests, plaintiffs immediately requested a de novo state hearing pursuant to Mississippi Department of Public Welfare procedures. The state hearing was held August 22, 1980, and on October 15, 1980, the Mississippi Department of Public Welfare ordered the return of Sharon Lynn to the plaintiffs' home.

This order was never carried out since on October 31, 1980, the Picketts filed an action in Carroll County Chancery Court seeking a permanent injunction against the Department prohibiting the removal of Sharon Lynn from the Picketts' home. The Crims were allowed to intervene in the chancery suit, and following a hearing on November 6, 1980, the chancellor entered the injunctive order requested by the Picketts. The Crims' appeal of that decision to the Mississippi Supreme Court was voluntarily dismissed.

On December 6, 1980, the Chancery Court of DeSoto County gave custody of Mary Lou Reisinger to plaintiffs, who legally adopted her on February 19, 1981. On March 13, 1981, this action was filed for vindication of federally protected rights.

## II. STATEMENT OF APPLICABLE LAW

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and therefore must present a claim of deprivation of a right protected by the Constitution or laws of the United States.[1] Although plaintiffs allege numerous claims against defendants, only the allegation that defendants deprived plaintiffs of their due process rights secured under the fifth and fourteenth amendments to the Constitution can be characterized as a federal right.

To make out a claim of deprivation of due process rights, plaintiffs must show first that they have been deprived of liberty or property in the constitutional sense, and second, that the procedure used to deprive them of that interest was constitutionally deficient. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Drummond v. Fulton City Dept. of Family & Children's Serv.,* 563 F.2d 1200 (5 Cir.1977), *cert. denied* 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141. Plaintiffs allege the removal of Sharon Lynn from their home and the refusal of defendants to allow them to adopt Sharon Lynn deprive them of a liberty interest of constitutional proportions.[2]

It has been abundantly clear since the Supreme Court's decision in *Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), that there are manifest

---

1. 42 U.S.C. § 1983 states in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States ... to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

2. Plaintiffs also allege Mary Lou Crim was deprived of her liberty interest of "close association" with her biological half-sister Sharon Lynn. We note initially that plaintiffs have failed to present, and we have been unable to find, any cases which recognize the right of siblings whose custody has been granted to the state to reside together. Additionally, plaintiffs fail to attack the original determination to grant custody of the seven Reisinger/Thomas siblings to the state to be temporarily placed in various foster homes. It was this determination, not the subsequent removal of Sharon Lynn from the Crim household, which denied Mary Lou of any "associational rights" she may have had. Therefore, Mary Lou's legal position with respect to Sharon Lynn's departure is on same footing as that of the foster parents.

legal differences between natural and foster families. Of particular interest to the court was the fact that in foster families any claimed interest derives from "state law and contractual arrangements." 431 U.S. at 845, 97 S.Ct. at 2110, 53 L.Ed.2d at 35. The court went on to state that in foster parent situations "it is appropriate to ascertain from state law the expectations and entitlements of the parties." 431 U.S. at 845–46, 97 S.Ct. at 2110, 53 L.Ed.2d at 36.

This is precisely the analysis used by the Fifth Circuit in *Drummond, supra.* There the court looked to state statutes and the foster parents' contract with the county child services department and concluded "there is no such constitutionally protected interest in the context of this case." Although such a determination requires a case by case analysis, we are now able to reach the same conclusion in the case sub judice.

■ Under Mississippi law the "right" of adoption is not a fundamental one, but rather a right created by state statute. *See* Miss.Code Ann. § 93–17–3 et seq. (1972) (adoption rights and procedures for State of Mississippi). The foster parent-child relationship also has its origins in state law. *See* Miss.Code Ann. § 43–15–1 et seq. (1972) (Administration of Child Welfare Law). Pursuant to its authority under state law, the Mississippi Department of Public Welfare enters into licensing agreements with numerous foster parents around the state. This agreement, as well as state statutes, makes clear the foster parent-child relationship is merely a temporary one.

In the instant case, Sharon Lynn was placed in the Crim home pursuant to a license agreement. Plaintiffs admit they knew it was the welfare department's policy that children should be returned to their natural parents if at all possible and that foster care relationship was a temporary one. (Deposition of Nancy Crim, pp. 158–59; Malvin Crim, pp. 65–66, 20, lines 3–22). Plaintiffs had had six different children in their home on the same basis, each of whom had been returned to their parents or transferred to another foster home. In fact, Mary Lou Reisinger (Crim) had been one of those children and was subsequently returned to her parents. (Nancy Crim, pp. 32, 157–59; Malvin Crim, pp. 14–21).

Apart from these admissions, the license agreement entered into with the welfare department makes clear that plaintiffs could have no expectations of a more permanent arrangement. It expressly provided the "actual permanent legal custody of the children" was to remain in the Department of Public Welfare and did not confer any right of custody of a child placed in the Crims' home. The agreement also provided that the plaintiffs waived any right to the custody of a child placed in their home and that they agreed not to attempt to adopt any child placed in their home. Finally, by entering into the agreement, the Crims agreed to cooperate with the welfare department in carrying out its plan for any foster child placed in their home, including the return of the child to its parents or a transfer of the child to another foster home.

■ In the recent case of *J.C. v. Natural Parents,* 417 So.2d 529 (Miss.1982), the Mississippi Supreme Court considered the issue of whether the waiver of adoption contained in the Department's standard foster home licensing agreement automatically precluded foster parents from adopting a foster child. In that case, the foster parents filed in chancery court a petition for adoption, which was opposed by both the welfare department and the approved prospective adoptive parents who intervened. *Id.* at 530. The chancellor dismissed the petition on the basis of the license agreement which he ruled automatically precluded foster parents from consideration in adoption proceedings. *Id.* at 530–31. In ruling on that issue, Justice Dan Lee, writing for the majority, held that "the chancellor was manifestly in error when he *excluded* the [foster parents] from *consideration* as adoptive parents." *Id.* at 531–32 (emphasis added). The case was reversed and remanded presumably to allow the foster parents *to be considered* as adoptive parents. In effect, the court held that, notwithstanding its terms, the license agreement did not disqualify the foster parents

from consideration. Thus, they as petitioners in chancery court were on the same footing as *any* other prospective adoptive parent. The court gave no indication that foster parents had an expectation or entitlement to adopt a foster child arising from the mere placement of the child in their home pursuant to a license agreement. It is manifestly clear that not every prospective adoptive parent has an expectation or entitlement sufficient for the recognition of a constitutional liberty interest in the right to adopt a child. *See Smith* and *Drummond, supra.* In our view, *J.C. v. Natural Parents, supra,* changes nothing in the analysis of whether plaintiffs had an expectation or entitlement of adoption in the case sub judice.

Nor were other written or verbal assurances made to the plaintiffs that they would be allowed permanent custody of Sharon Lynn. As Mrs. Crim conceded, any expectation that Mary Lou or Sharon Lynn might be permanently placed in their home was a misapprehension on their part and not the result of assurance or policy of the state welfare department. (Nancy Crim, p. 159).

■ Under these circumstances, we conclude there could have been no expectation or entitlement on the part of plaintiffs that Sharon Lynn would remain permanently in their home. We therefore conclude that plaintiffs have no liberty or property interests which are entitled due process protection under the fifth or fourteenth amendment. *See Drummond, supra,* at 1206; *Kyees v. County Dept. of Public Welfare,* 600 F.2d 693, 698–99 (7 Cir.1979) (state law and contractual agreement preclude liberty interest under facts of case). The remaining claims asserted by plaintiffs are at best pendent state law claims and therefore must also be dismissed. Therefore, it is

ORDERED

That the motion for summary judgment of all defendants remaining in the case is hereby granted, and plaintiffs' complaint is hereby dismissed with prejudice.