No. 13452

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

IN THE MATTER OF THE ADOPTION OF
BABY GIRL HALL, a Minor Child

---

DONNA HALL NAGY,

Appellant,

-vs-

GLEN E. WILLIAMS and DOLORES
LORRAINE WILLIAMS,

Respondents.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellant:

Smith, Emmons, Baillie and Walsh, Great Falls,
Montana
Robert J. Emmons argued, Great Falls, Montana

For Respondents:

James W. Zion argued, Helena, Montana
Thomas E. Boland argued for Baby Girl Hall, Helena,
Montana

---

Submitted: January 13, 1977

Decided: JUL -1 1977

Filed: JUL -1 1977

Thomas J. Kearney

Clerk

Hon. Gordon Bennett, District Judge, sitting for Chief Justice
Paul G. Hatfield, delivered the Opinion of the Court.

This is an appeal from a final order of the district court,
Cascade County, denying a petition for annulment of an adoption
decree and, in the alternative, for a writ of habeas corpus.

Petitioner was born January 21, 1954, and gave birth to the
child involved in this litigation on June 18, 1970. On July 17,
1970, the district court decreed the adoption of the child by
respondents, having found the child was abandoned by its natural
parents. In June 1975, petitioner discovered her child had
purportedly been adopted by respondents and was living in their
home. She filed her petition November 4, 1975. Respondents moved
to quash.

Pursuant to a written stipulation filed by the parties, the
district court on November 14, 1975, issued its order determining,
inter alia, that the adoption decree was invalid. It found a lack
of due process because no notice was given the natural parents, and
that consent had not been waived by abandonment for the required
period of one year, in view of the fact the child was only 24 days
old at the time of the adoption.

In the same order, and again by stipulation of the parties, the
court directed the local welfare office to investigate the living
circumstances and parental qualifications of petitioner and respon-
dents and make its recommendation as to where the child should best
be placed. The report was to be made to the court with counsel for
both parties present and allowed to cross-examine as to its contents.

After the filing of the report and an adversary hearing on
the question of the best interests of the child, the court on March

29, 1976, issued its findings of fact, conclusion of law and order, wherein it confirmed its previous conclusion that the adoption decree was invalid for lack of notice and the absence of consent by abandonment. The court then concluded petitioner was guilty of laches and was estopped from maintaining her petition because she could have commenced her action upon reaching majority on July 1, 1973, under the provisions of Art. II, Section 14, 1972 Montana Constitution. It also concluded it was in the best interests of the child to remain in respondents' home. The court denied the petition and granted the motion to quash.

We would not disturb the stipulation of the parties and the conclusion of the district court pursuant thereto that the adoption decree is invalid, as there is no request or basis presented for doing so. The decree is, however, not only invalid, it is void for all purposes. It is conceded no notice was given the natural parents. More than fifty years ago, this Court recited with approval the universally accepted general rule that notice to natural parents in these cases is indispensable to jurisdiction; if jurisdiction is not thus obtained there can be no judicial determination, and any such purported determination is void. State ex rel. Thompson v. District Court, 75 Mont. 147, 151, 242 P. 959. This Court has not deviated from this rule. See: Bascom v. Carpenter, 126 Mont. 129, 136, 246 P.2d 223, recently reinforced by the United States Supreme Court in Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L ed 2d 62. Nothing appears in this case that would remove it from the application of the rule. In 1921 this Court in Lamont v. Vinger, 61 Mont. 530, 546, 202 P. 769, adopted from the landmark case of Pennoyer v. Neff, 95 U.S. 714, 728, 24 L Ed 565, the fundamental principle that:

"A judgment void when rendered will always remain void. The validity of every judgment depends upon the jurisdiction of the court before it is rendered, not upon what may occur subsequently."

This principle remains undisturbed, here and elsewhere. It requires that we give a void decree no effect whatever at any time and view it as a nullity for all purposes. Thus it is the limited function of this Court to declare there never was a legally cognizable adoption decree in this case. That being so, the equitable doctrines of laches and estoppel cannot be applied to save the non-existent decree or to implement it in any way.

It is also conceded that no consent was given by the natural parents, nor was there a valid exception to the consent requirement of Montana's statute, section 61-205, R.C.M. 1947. We have required strict compliance with that statute (Adoption of Biery, 164 Mont. 353, 522 P.2d 1377), but have not yet found failure to comply with it jurisdictional, as have courts in other jurisdictions. See for example: Franklin v. Biggs, 14 Or.App.450, 513 P.2d 1216,1217; 2 C.J.S. Adoption of Persons, §51, p. 470, and cases cited therein. We see no reason for relaxation of the standard in this case and would set aside the decree, as we did in Biery, if it had any validity in the first place.

Petitioner sought not only annulment of the adoption decree but the return of her child upon a writ of habeas corpus. Apparently pursuant to the latter petition, and upon stipulation of the parties, a full hearing was provided in the district court on the question of the "best interests of the child". This being the basic criterion by which custody is determined the hearing may be considered a custody hearing, held with the consent of both parties. On the basis of this hearing, the court concluded as a matter of law that it was in the best interests of the child to leave it with respondents. Having so concluded, the court granted responsents' motion

to quash and, in effect, granted custody to them.

We cannot quarrel with the court's conclusion as to the best interests of the child. The transcript reveals the case was thoroughly investigated by the county welfare department and its report was aired with equal thoroughness at the hearing. There is an abundance of substantial credible evidence to support the court's conclusion. Thus we find no abuse of discretion by the district court and must affirm its conclusion. Adoption of Biery, supra, and cases cited therein.

For the above reasons, the adoption decree involved herein should be annulled and permanent custody of the child decreed in respondents. The cause is remanded to the district court for entry of its decrees in accordance with this opinion.

Hon. Gordon Bennett, District Judge.

We Concur:

Justices.

Mr. Justice Daniel J. Shea concurring in part and dissenting in part:

I concur with that portion of the majority decision voiding the adoption decree, but I dissent on its decision granting permanent custody to the adoptive parents. For all practical purposes this decision forecloses the natural mother from ever successfully petitioning to obtain custody of her daughter. She can have no consolation in winning her case but losing her child.

I do not believe that the result would have been the same in the district court if the district court had voided the adoption decree, for in that case the adoptive parents would not have had any legal claim to the child. While the court would not have been bound to immediately give custody to the natural mother, the adoptive parents would have had no legal basis for then obtaining permanent custody of the child. It is clear however, that the district court recognized this problem for it held that although the adoption decree was void, it really was not void. The reason was that the natural mother was guilty of laches and therefore had no legal basis to set the adoption aside. However, by upholding the adoptive parents' claim of laches the court did not have to reach a decision on the "best interests" of the child, for at that point the natural mother had no legal right to be heard. She was standing before the court as a stranger trying to obtain custody of a child that was no longer hers. Certainly the court was not going to award permanent custody to a stranger. But this Court by overruling the claim of laches as applied to a void adoption decree, held the natural mother was not a stranger, and she was wronged by the adoptive parents participating in the filing of a false adoption petition. But in the same breath the Court has deprived the natural mother

-6-

from ever obtaining legal custody of her daughter. The provisions of the Uniform Marriage and Divorce Act, applicable to further district court proceedings in this case, place an impossible burden on the natural mother.

The Uniform Marriage and Divorce Act went into effect on January 1, 1976 and pursuant to section 48-341(4) R.C.M. 1947, any further district court proceedings in this case must be under this Act. Section 48-341(4) provides:

> "In any action or proceeding in which an appeal was pending or a new trial was ordered prior to the effective date of this act, the law in effect at the time of the order sustaining the appeal or the new trial governs the appeal, the new trial, and any subsequent trial or appeal."

Here, the trial took place in March, 1976 and an appeal was filed on April 27, 1976. Therefore, further proceedings in this case must be under this Act.

Under Section 48-339(1), R.C.M. 1947, a petition to obtain custody of a child (absent extenuating and emergency situations) can be filed only once in a two year period. This means the mother must endure a substantial waiting period before she can file a custody petition. But even if she later filed a petition, her efforts would most likely be doomed to failure because she must overcome the heavy burden of proof placed on her by the Act.

To be entitled to a hearing under section 48-339, R.C.M. 1947, the natural mother must file an affidavit or sworn petition alleging evidentiary facts (section 48-340, R.C.M. 1947) that the child's "physical, mental, moral, or emotional health" is being harmed in her present home. Because all agree that the adoptive parents have been good parents, it would indeed take a creative mind to allege sufficient evidentiary facts that would entitle the natural mother to a hearing. Moreover, since the trial court has already determined the "best interests" of the child are with

the adoptive parents, upon another hearing the court would be required to retain them as custodians unless "the child's present environment endangers seriously his physical, mental, moral, or emotional health, and the harm likely to be caused by a change of environment is outweighed by its advantages to him." Section 48-339(2)(c). Thus we have a situation where the stated purpose of the Uniform Marriage and Divorce Act of keeping the child in a stable, permanent environment is depriving the natural mother from ever obtaining custody of her child. This is not a just result, nor is it necessarily, in the long run, the right decision for the child.

The natural mother lives only a few blocks from her child, but only knew of her whereabouts just a short period before filing the petition in district court to annul the adoption decree. The child does not know she has been adopted. However, even assuming the adoptive parents have been granted permanent custody it would appear the natural mother now has a right to petition for reasonable visitation rights pursuant to section 48-337(1), R.C.M. 1947, which provides:

> "A parent not granted custody of the child
> is entitled to reasonable visitation rights
> unless the court finds, after a hearing, that
> visitation would endanger seriously the child's
> physical, mental, moral, or emotional health."

It would seem most likely the child will now find out she has been adopted and the identity of her natural mother. Yet the mother will never have a meaningful opportunity to obtain the custody of her daughter.

In setting aside the adoption decree but still leaving permanent custody in the adoptive parents, the Court relies on Adoption Of Biery, 164 Mont. 353, 522 P.2d 1377, but I feel that reliance is misplaced. In Biery the natural mother was served with process before the adoption and participated in a

full hearing to determine the "best interests" of the child. Also, the adoptive parents in Biery had actual custody of the child before the adoption. The reason for setting aside the adoption in Biery was because there was no finding by the district court that the mother had abandoned the child for a period of one year. A statute required the adoptive parents to prove the mother did not support the child for a one year period and she had the ability to support the child during that period. Section 61-205, R.C.M. 1947. The adoption was set aside without prejudice. The facts are very different in the instant case.

The natural mother was a minor when she signed a consent form to have her child adopted. No guardian ad litem was appointed to represent her interests. She was not served with process in the guardianship proceedings. The petition to adopt was false on its face. It alleged abandonment, in which case the abandonment must have existed for a period of at least one year. Section 61-205,R.C.M. 1947. However, the petition alleged the child was born on June 18, 1970, and the petition was filed on July 17, 1970, just 24 days after the child's birth. Still the court approved the adoption. The entire proceedings were devoid of even the rudiments of due process.

The effect of the Court's decision is that due process when applied to child custody cases is meaningless, for it is custody of the child that is important. If a couple, however well intentioned, can acquire permanent custody of a child in the manner done in this case, then parental rights are meaningless. In effect, this Court is holding that permanent custody of a child can be acquired by a hybrid form of adverse possession and it does not matter that the initial possession was acquired by illegal means.

I would void the entire proceedings and allow the adoptive parents temporary custody until such time as satisfactory arrangements could be worked out for the transfer of permanent custody to the natural mother.

_Daniel J. Shea_
Justice