*370 JUSTICE McDONOUGH
delivered the Opinion of the Court.
This is an appeal from an order of the First Judicial District, Lewis and Clark County, denying petitioners’ request for a preliminary injunction. Inasmuch as the issues are the same in relators’ petition for supervisory control, the petition for supervisory control is hereby dismissed.
We frame the issue as follows: Whether the District Court erred in determining § 40-8-108, MCA (1991), barred the foster parents from contesting the placement for adoption decision of the agency having custody and barred the foster parents’ petition for adoption.
On March 29, 1989, the custody of Baby Girl W. was granted to Catholic Social Services for Montana (CSS) for placement and ultimate adoption. The birth mother had informed CSS that she wished to keep the child away from the birth father out of fear for herself and the child. She related that in the past the birth father had been abusive to her and an older child. The birth mother did not want the father to know the whereabouts of the child. CSS assured the birth mother the child would be placed in a safe home where the father would not find her. On March 30,1989, CSS placed Baby Girl W. with the relators, James Lewis and Theresa Sather, as foster parents. This was the first foster child for the Lewises. The Lewises signed an agreement stating they would not attempt to adopt the child placed in their care. The Lewises were also told of the assurances given to the birth mother that the child would be placed out of state away from the father. This was reiterated to the Lewises from time to time.
Initially, CSS told the Lewises that Baby Girl W. would be in their care only a short while. Having previously obtained a consent for termination of parental rights from the birth mother, the District Court in a lengthy contested action by the birth father, terminated the parental rights of the birth mother and the birth father, granted legal custody to CSS and granted it the right to consent to Baby Girl W.’s adoption. The birth father appealed this decision to this Court. We affirmed the District Court’s decision on July 2, 1991. In the Matter of the Parental Rights of Baby Girl W. (1991), 249 Mont. 206, 814 P.2d 976. Because of the delay in making a final termination of parental rights, Baby Girl W. remained with the Lewises for 27 months. During this time the Lewises began to regard Baby Girl W. as their own and vocalized their wish to adopt the child.
CSS’s plan had always been to place Baby Girl W. for adoption with a family other than the foster family. CSS did not in any way raise *371 the expectations of the Lewises that they would be able to adopt the child. Subsequent to this Court’s decision on July 15,1991, a meeting occurred between Marilyn McKibben, director of CSS, and the Lewises to discuss Baby Girl W.’s future. Although the Lewises requested CSS’s attorney to set up a meeting to discuss their adoption of Baby Girl W., Marilyn McKibben indicated she was not interested in meeting with the attorneys.
At the July 15,1991 meeting, CSS indicated they would be removing Baby Girl W. from the Lewises’ home in the next day or so. The Lewises cooperated with CSS in order not to hurt their chances of adopting Baby Girl W. and immediately took steps to retain legal counsel for that end. On July 17, 1991, Baby Girl W. was removed from the Lewises’home. On August 2,1991, CSS placed Baby Girl W. out of state with a potential adoptive family.
There is no dispute that the Lewises provided a safe, stable and nurturing home for Baby Girl W. and that, under normal circumstances, they would be eligible adoptive parents. This is an emotionally difficult case for all involved. The District Court in its ruling found that under § 40-8-108, MCA, only the parties designated could place the child for adoption. The court reasoned that since CSS did not consent to the Lewises’ request for adoption, and had not placed the child for adoption in Montana, the Lewises could not adopt Baby Girl W.
The District Court found that there was evidence in the record that the father was a danger to the birth mother and the child, and that such evidence would be of reasonable concern on the part of CSS. The District Court further found that CSS is an experienced adoption agency and the court gave deference as to its view of the seriousness of any threat that might be posed by the birth father. Based on the above, the court further found that it would then be unable to say that the actions of CSS in placing the child out of state were unreasonable or that refusal by CSS to give consent to the petitioners was unreasonable.
The District Court was also of the view that granting relief to the petitioners could have a broader policy impact on the entire adoption process in Montana. Adoption agencies would be fearful of placing children in foster homes if they were not reasonably certain that they could place a child with the family of their choice. Primarily the court, as stated above, based its decision on the wording of § 40-8-108, MCA, and denied the preliminary injunction, dismissed the case and entered judgment accordingly.
*372 The District Court found that § 40-8-108, MCA, was a bar to the Lewises’ petition for adoption of Baby Girl W. The statute provides:
A child may be placed for adoption only by: (1) the department; (2) a licensed child placing agency; or (3) the child’s parents.
Placement is defined in § 40-8-103 (11), MCA(1991) as: “...the transfer of physical custody of a child with respect to whom all parental rights have been terminated and who is otherwise legally free for adoption to a person who intends to adopt the child.” There is no case law interpreting these sections of our statute. We agree with the District Court that in the instant case procedurally, under § 40-8-108, MCA, only CSS may place Baby Girl W. for adoption.
Section 40-8-108, MCA restricts who may place a child for adoption and does not include courts in its list of who may place a child for adoption. Therefore it is clear that the courts could not place Baby Girl W. with the Lewises. No dispute exists that CSS has placed Baby Girl W. for adoption.
The wording of the Montana act itself and the public policy of discouraging black market adoptions and private adoptions argue against judicial review of placement decisions. Montana, along with five other states, adopted the Uniform Adoption Act (UAA). According to Adoption Law and Practice, Joan H. Hollinger, the act attempts to discourage black market adoptions and private adoptions. See, pp. 4A-3 (1989). Neither §§ 40-8-103 (11) nor 40-8-108, MCA, are part of the UAA. However, legislative minutes to the 1981 revision of Montana’s adoption law indicate that § 40-8-108, MCA, was enacted out of concern for the black market problem. Additionally, legislative minutes to the 1989 amendment of § 40-8-121, MCA, which designates the steps in filing a petition for adoption, suggest the amendment was enacted due to perceived problems with private placement. An example of Montana’s concern with private placements would be the elaborate framework set forth in § 40-8-109, MCA(1991), regulating private placements. Under the statute parents who wish to have their child adopted by non-relatives must give notice to the authorities of their intent and must follow the numerous requirements of the statute prior to private placement.
Cases exist from other jurisdictions which address an agency’s refusal to consent to adoption of a child that has already been placed in a prospective adoptive home; the usual standard of review in such cases is arbitrary and capricious. That is not the exact question here. Homer H. Clark, Jr., in his treatise, The Law of Domestic Relations in the United States, 2nd ed. vol. 2, 615, 651, (1988), suggests that *373 theoretically, an agency’s refusal to place a child with prospective adoptive parents may be reviewable under the same standard as the denial of a consent to an adoption. Even if we considered whether or not the placement by CSS was subject to review because of arbitrariness or capriciousness under the facts of this case, it would not change the result. The District Court in its findings, after viewing all the evidence, did not find the actions of CSS in placing the child out of state as unreasonable or refusal by CSS to give consent to the petitioners as unreasonable.
In view of the District Court’s findings and conclusions that based on the evidence and record, it was unable to say that the actions of CSS in placing the child out of state was unreasonable or that CSS’s refusal to give consent to adoption by the Lewises was unreasonable, the District Court could not in any case determine the actions of CSS to be arbitrary and capricious. We cannot say the court was erroneous or abused its discretion in making such findings, conclusions, and final decision. We therefore affirm the District Court.
CHIEF JUSTICE TURNAGE, JUSTICES HARRISON and GRAY concur.