No. 95-004

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

FILED

AUG 15 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF F.H.,

    A Minor Child.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry Moran, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ann Gilkey, Special Assistant Attorney General,
Department of Family Services, Helena, Montana

    For Respondent:

        Leanne M. Schraudner, Schraudner & Hillier, Bozeman,
Montana; Glenna Kurns, Lewistown, Montana (Guardian
ad litem)

Submitted on Briefs:  May 11, 1995

Decided: August 15, 1995

Filed:

_____
        Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from an adoption order rendered by the Eighteenth Judicial District Court, Gallatin County. We reverse and remand.

We consider the following issues:

I. Does the failure to notify the guardian ad litem of F.H. constitute reversible error?

II. Did the District Court err by issuing an adoption order without notification to and consent from the Department of Family Services?

This case involves a minor child, F.H., whose natural parents lost parental rights to the child because of child neglect and sexual abuse by the father. The parental rights of D.H. and C.C., father and mother of F.H., were terminated on June 2, 1994 in the Tenth Judicial District Court, Fergus County. Permanent custody of F.H. was granted to the Department of Family Services.

F.H. has one great grandparent, Elizabeth Chase, 65 years of age, who is married to Larry Chase, age 53. Larry and Elizabeth Chase filed a petition for permanent adoption on July 1, 1994. F.H. was born February 11, 1987. The District Court of Gallatin County issued an Order for Adoption Hearing and Investigation, which provided that a copy of the order should be served on the DFS "which shall furnish to the Court a written report of its investigation of the petitioners, their family, home, and the circumstances of the minor child . . . ." On September 15, 1994, DFS presented an investigative report to the court which contained

extensive documentation of the involvement of DFS and its personnel from December of 1989 on. That report showed that on February 23, 1993, F.H. was placed in the home of Larry and Betty Chase; and that F.H. was transferred to a Youth Dynamics home in Bozeman on June 8, 1993. On December 21, 1993, F.H. was placed in the foster home of David and Jane Yearous with the intention that it would be a foster-adoptive permanent placement for F.H. The report concludes with the recommendation of the DFS that there is no intention to exclude the Chases as a part of F.H.'s life--they are family and have done their best to continue to stay in constant touch with him. The recommendation on the part of DFS is that the Yearous family would best meet F.H.'s special specific needs. In addition the report described at some length various witnesses which included the following: Youth Dynamics treatment supervisor and Youth Dynamics southwestern regional manager at Bozeman, therapist at Bozeman, and Jim Moe, placing social worker for DFS in Lewistown. The report then emphasized that the foregoing people have a documented and ongoing and therapeutic relationship with F.H. and would be able to update the court as to F.H.'s current progress in the Yearous home. The report was signed by Christy Ruckwardt, Family Resource Specialist, DFS. The findings of the District Court following hearing do not indicate that any of the DFS material was specifically considered.

The hearing on the petition for permanent adoption of F.H. was held in the Gallatin County District Court on September 23, 1994. DFS was not represented at the hearing, nor was the guardian ad

3

litem represented at the hearing. Oral testimony was submitted by the petitioners, which included the testimony of Becky Berglund, who does therapeutic foster care for Youth Dynamics. Both Betty Chase and Larry Chase testified. Dr. David King testified by video deposition. The record of that deposition reflected that a notice of the deposition had been served on the DFS but that no representative of DFS had chosen to participate at the deposition. Following the hearing, the District Court entered its Decree of Adoption dated September 23, 1994, which concluded that there was overwhelming, substantial, credible evidence to support the conclusion that the best interests of the child would be served by placing F.H. permanently with Larry and Elizabeth Chase. The order further provided that F.H. was declared adopted by Larry Chase and Elizabeth Chase, the six-month interlocutory period was waived and the child thereafter was to be treated in all respects as the child of Larry Chase and Elizabeth Chase. It further provided that the DFS should see that F.H. was physically placed in the Chase home immediately. We note that following the entry of this order, F.H. was abruptly removed from the Yearous household and transferred to the Larry and Elizabeth Chase household.

Without detailing the findings and conclusions of the District Court we point out that the court stated in its Decree of Adoption that DFS had been granted custody on June 2, 1994, subject to the requirement of permanently placing the child within 180 days. The court took DFS to task for not placing the child within the time parameters required and admonished the County Attorney for not

4

filing criminal charges against the natural father. The court also found fault with DFS for not appearing in person at the September 23, 1994 hearing. The court concluded that "overwhelming, substantial, credible evidence" existed that the best interests of the child would be served by placing F.H. with his great grandparents, the Chases. The court further concluded that DFS did not act in the best interests of F.H.

In connection with the hearing before the District Court, we note there were over twenty trial exhibits from the DFS records which were admitted by the court. These established the extent and nature of the investigation by various DFS personnel.

DFS filed its Motion to Vacate Decree or Re-hear Petition on October 5, 1994. The motion was supported by the following materials: the affidavit of the chief deputy county attorney of Gallatin County; the affidavit of Eugenia Bellante, a licensed professional counselor, in which she emphasized that she recommended against permanent placement of F.H. with the Chases, the great grandparents; and the affidavit of Christie Ruckwardt, family resource specialist above mentioned, who described how she was unsure how to proceed in conducting the investigation because DFS had custody of the child--that she consulted with counsel for the DFS and other personnel and also consulted with Jim Moe, the Fergus County social worker in charge of recommending permanent placement--that she delivered her report on September 14, 1994, to the office of the district judge and recommended against the adoptive placement of F.H. with the Chases. She stated that she

5

was advised by one of the persons in the judge's office that her presence at the hearing was not required. In addition the affidavit of Hank Hudson, Director of DFS, in which he specifically stated that he had not consented nor did he consent to the adoption of F.H. by Larry and Betty Chase, and the affidavit of Steven Ware, Treatment Manager for Youth Dynamics in Bozeman in which he recommended that F.H.'s best interests would be served by being adopted by Dave and Jane Yearous, due to F.H.'s therapeutic needs, including issues regarding abandonment, sex abuse, lack of socialization skills and medication. He also emphasized that continued visitation with his great grandparents, the Chases, would be in F.H.'s best interests. Also the affidavit of Jim Moe, social worker with DFS in Fergus County, wherein he recommended that F.H. be permanently placed with the Yearous family and not with the Chases. Glenna Kurns, guardian ad litem for F.H., also filed a Motion for Reconsideration on October 3, 1994. The motions for reconsideration were denied by the District Court by order dated November 2, 1994. DFS appealed the court's ruling.

## Issue I

Does the failure to notify the guardian ad litem of F.H. constitute reversible error?

Because the action taken by the District Court was based upon its interpretation of the law, we will review the court's actions as a legal question. We review a District Court's interpretation of the law as to whether it is correct. Steer Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

6

Glenna Kurns (Kurns) was appointed guardian ad litem in the Tenth Judicial District Court, Fergus County, during the termination of parental rights hearing for the biological parents of F.H. Kurns filed an affidavit and request for reconsideration with the District Court of the Eighteenth Judicial District, Gallatin County, when she discovered that she had not been noticed for F.H.'s adoption proceedings.

Kurns argues that as the child's guardian ad litem, her responsibilities last until the child is permanently placed. While the Chases argue that Kurns was appointed only for the parental termination proceeding, that fact alone will not divest Kurns of responsibility.

Our statutory scheme is very explicit when directing guardians ad litem concerning their responsibilities and how long they must remain responsible within the situation. Therefore, we need look no further than the statute under which the court appointed Kurns:

> **Petition for termination --separate hearing--right to counsel--no jury trial.** (3) A guardian ad litem shall be appointed to represent the child's best interests in any hearing determining the involuntary termination of the parent-child legal relationship. <u>The guardian ad litem shall continue to represent the child until the child is returned home or placed in an appropriate permanent placement</u>. (Emphasis added.)

Section 41-3-607, MCA. Further, our statutes require a court to appoint a guardian ad litem in every case in which child abuse or neglect is suspected:

> (2) The guardian ad litem is charged with the representation of the child's interests. The guardian ad litem has the following general duties:
> . . . .
> (e) to appear and participate in <u>all proceedings</u> to the

7

degree necessary to adequately represent the child and make recommendation to the court concerning the child's welfare. (Emphasis added.)

Section 41-3-303, MCA.

The Chases argue that Black's Law Dictionary defines a guardian ad litem as an attorney appointed for a child at a particular hearing. While that may be so, our legislature has decided differently and it is the statute we must address.

The court was required to notify Kurns because the child had not been permanently placed and, therefore, Kurns had not been released from her responsibilities regarding F.H. We hold that failure to notify the child's guardian ad litem was reversible error.

## Issue II

Did the District Court err by issuing an adoption order without notification to and consent from the Department of Family Services?

DFS contends that the Conclusions of Law by the District Court fail to recognize certain legal requirements which were not met by the petitioners in this case. In our review of conclusions of law, this Court determines whether the lower court's interpretation of the law is correct. Estate of Alcorn (1994), 263 Mont. 353, 355, 868 P.2d 629, 630.

Section 40-8-108, MCA, provides as follows as to who may place a child for adoption:

**Who may place a child for adoption.** A child may be placed for adoption only by:
(1)   the department [DFS];
(2)   a licensed child-placing agency; or

8

(3) the child's parents.

With regard to the required consent for adoption, § 40-8-111, MCA, provides in pertinent part:

**Consent required for adoption.** (1) <u>An adoption of a child may be decreed [by a court] when there have been filed written consents</u> to adoption executed by:

. . . .

(c) <u>the executive head of an agency</u> if the child has been relinquished for adoption to such agency or if the rights of the parents have been judicially terminated . . . .

Under the specific statutes, it is the DFS which is granted the statutory right to place the child for adoption. In addition, the statute provides that an adoption may be decreed by a court when the written consent to adoption executed by the executive head of an agency has been filed. No such consent was filed here. Further, as demonstrated by the above mentioned affidavit of Hank Hudson, the executive head of DFS stated that he had not consented and did not consent to the adoption of F.H. by Larry and Betty Chase.

On the specific question of whether or not a district court can place a child for adoption, this Court stated in Lewis v. Catholic Services (1992), 253 Mont. 369, 372, 833 P.2d 1023, 1025:

Section 40-8-108, MCA restricts who may place a child for adoption and does not include courts in its list of who may place a child for adoption. Therefore it is clear that the courts could not place Baby Girl W. with the Lewises.

In a similar proceeding to the present one, where a district court failed to obtain consent of the appropriate legal custodian of a child, this Court "voided" the adoption decree because of the lack of notice and therefore, lack of consent. Matter of Adoption

9

of Hall (1977), 173 Mont. 142, 566 P.2d 401.

We hold that §§ 40-8-108 and 40-8-111, MCA, are binding upon the District Court in this case and that the order of adoption was improper in the absence of a placement for adoption by the DFS and the written consent to adoption executed by the executive head of DFS.

We reverse the decree of adoption entered by the District Court and remand the case to the District Court for further consideration following the service of appropriate notice upon the guardian ad litem of F.H. and DFS and the consideration of all evidence submitted by the parties.

The record is replete with problems which have been raised for F.H. by the shifts in custody from one set of parties to another. As a result, we conclude that the custody of F.H. shall remain with Larry and Elizabeth Chase until further specific order of the District Court.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices