926 P.2d 694 (1996)
In re M.L.M., a minor child.
No. 95-487.
Supreme Court of Montana.
Heard April 19, 1996.
Submitted May 8, 1996.
Decided October 18, 1996.
Rehearing Denied November 14, 1996.
Charles E. Petaja, Helena, for Appellant.
Ann Gilkey, Special Assistant Attorney General, Department of Public Health and Human Services, Division of Child and Family Services, Helena, for Respondent.
TRIEWEILER, Justice.
On February 28, 1995, Nicolle Jean Will filed a petition for adoption in the District Court for the First Judicial District in Lewis and Clark County. The Department of Family Services (DFS) filed a motion to dismiss the petition on April 7, 1995. Following an oral argument, the District Court granted DFS's motion to dismiss. Will appeals the District Court's order granting the motion to dismiss. We reverse the order of the District Court and remand this case to the District Court for proceedings consistent with this opinion.
There are two issues on appeal:
1. Did the District Court err when it concluded that it lacked jurisdiction, pursuant to § 40-8-111(1)(c), MCA, to review a petition for adoption absent the agency's consent to adoption?
2. Did the District Court err when it concluded that pursuant to § 40-8-108, MCA, agency placement was a prerequisite to adoption?

FACTUAL BACKGROUND
The following facts are taken from Nicolle Will's petition for adoption. However, since her petition was dismissed pursuant to Rule 12(b)(6), M.R.Civ.P., we presume the facts to be true for purposes of our review of the District Court's order.
*695 M.L.M. was abandoned by his biological parents shortly after his birth on December 16, 1993. Thereafter, the DFS was granted custody of M.L.M. and placed him with Deborah Liggett, a licensed foster parent. On February 1, 1994, shortly after M.L.M. was placed in her care, Liggett placed M.L.M. in the care of Nicolle Will. At that time, M.L.M. was only six weeks old.
From February 1, 1994, until January 31, 1995, Will had sole care and custody of M.L.M. and provided for all of M.L.M.'s needs without any compensation from either Liggett or DFS. During that one-year period, Will met with social workers, child resource specialists, and supervisors, and communicated to each her desire to adopt M.L.M. After one of DFS's agents assured Will that she had a "99 percent chance" of adopting M.L.M., Will entered into and completed a ten-week adoption applicant course required by DFS.
On January 31, 1995, however, Deborah Liggett took physical custody of M.L.M. on behalf of DFS. Liggett informed Will that DFS had decided to place M.L.M. elsewhere for adoption.
On February 28, 1995, Will filed a petition for adoption of M.L.M. in the First Judicial District Court. DFS filed a motion to dismiss Will's petition. DFS maintained that the District Court did not have jurisdiction to grant Will's petition because DFS had not given its consent to the adoption, pursuant to § 40-8-111, MCA, and because DFS had not placed M.L.M. with Will for adoption, pursuant to § 40-8-108, MCA. Following a hearing on July 27, 1995, the District Court granted DFS's motion to dismiss. The court held that since the court was excluded from the list of those who may place a child for adoption pursuant to § 40-8-108, MCA, and since DFS had refused to consent to Will's petition for adoption of M.L.M. pursuant to § 40-8-111, MCA, the court did not have jurisdiction to review the merits of Will's petition for adoption.

ISSUE 1
Did the District Court err when it concluded that it lacked jurisdiction, pursuant to § 40-8-111(1)(c), MCA, to review a petition for adoption absent the agency's consent to adoption?
The District Court dismissed Will's petition for adoption based in part on its conclusion that it did not have jurisdiction pursuant to § 40-8-111(1)(c), MCA, to entertain a petition for adoption absent DFS's consent to adoption. We review a district court's conclusions of law to determine whether they are correct. In re Estate of Alcorn (1994), 263 Mont. 353, 355, 868 P.2d 629, 630.
Section 40-8-111, MCA, provides in relevant part:
(1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:
(a) both parents, if living, or the surviving parent of a child ...
....
(b) the legal guardian of the child if both parents are dead or if the rights of the parents have been terminated by judicial proceedings and the guardian has authority by order of the court appointing the guardian to consent to the adoption;
(c) the executive head of an agency if the child has been relinquished for adoption to the agency or if the rights of the parents have been judicially terminated or if both parents are dead and custody of the child has been legally vested in the agency with authority to consent to adoption of the child; or
(d) any person having legal custody of a child by court order if the parental rights of the parents have been judicially terminated. In that case, the court having jurisdiction of the custody of the child shall consent to adoption and a certified copy of its order must be attached to the petition.
(Emphasis added.) In this case, because M.L.M.'s biological parents' rights had been judicially terminated, and because custody and the right to consent to M.L.M.'s adoption had been transferred to DFS, subsection (1)(c), which provides for consent by the head of the agency, was applicable. Because the agency refused to consent to Will's adoption of M.L.M., however, DFS maintains that the *696 District Court was without jurisdiction to review Will's petition for adoption. In addition, DFS contends that the District Court was without jurisdiction to review the agency's decision to withhold its consent to adoption.
Although § 40-8-111(1)(c), MCA, predicates adoption on agency consent, it does not follow that the agency's right to withhold consent is absolute. As this Court has recognized for more than fifty years:
[T]he power of the district court may at any time be invoked to guard and protect the welfare of the minor child. No statute may be so construed as to deprive the court of its jurisdiction in that respect.

State ex rel. Frederick v. District Court (1946), 119 Mont. 143, 150, 173 P.2d 626, 629 (emphasis added). In Frederick, we suggested that the district court's jurisdiction could be invoked "to guard and protect the welfare of the minor child" if an agency's denial of consent was arbitrary, capricious, or unreasonable. Frederick, 119 Mont. at 151, 173 P.2d at 630. Our decision in Frederick was premised on our recognition that the fundamental purpose of Montana's adoption statutes was to protect the best interests of the child and that the ultimate decision as to the child's best interests rested with the district court. Fifty years later, our statutory scheme still reflects those principles. See § 40-8-114, MCA (stating Montana's policy to "ensure that the best interests of the child are met by adoption proceedings" and adding that "[t]he needs of the child must be the primary focus of adoption proceedings"); §§ 40-8-123 and -124, MCA (giving the district court authority to enter a final decree of adoption if the court is satisfied that the adoption is in the best interests of the child).
In the years since Frederick, however, this Court has erroneously elevated agency consent above the fundamental consideration of the child's best interests. For example, in In re F.H. (1995), 272 Mont. 342, 901 P.2d 96, this Court held that a district court could not enter an order of adoption without a written consent to adoption executed by the executive head of DFS. F.H., 272 Mont. at 348, 901 P.2d at 100. In that case, the district court concluded after a hearing that "overwhelming, substantial, credible evidence" existed to establish that the best interests of the child would be served by granting the petition for adoption; this Court, however, refused to defer to that conclusion and, in effect, shielded the agency's denial of consent from judicial scrutiny. F.H., 272 Mont. at 345, 348, 901 P.2d at 98, 100. Our decision in F.H. may have been premised in part on language from an earlier case in which we stated:
The wording of the Montana [adoption] act itself and the public policy of discouraging black market adoptions and private adoptions argue against judicial review of placement decisions.
Lewis v. Catholic Social Servs. (1992), 253 Mont. 369, 372, 833 P.2d 1023, 1025. The stated purpose of discouraging black market and private adoptions, however, is not inconsistent with the district court's authority and responsibility to review placement decisions to assure that they do not arbitrarily ignore the child's best interests. Frederick, 119 Mont. at 150, 173 P.2d at 629. Therefore, to the extent that our prior opinions in F.H. and Lewis conflict with our holding today that agency consent is subject to judicial review, we reverse those cases. We reaffirm our holding in Frederick that an agency's refusal to consent to adoption is subject to judicial scrutiny for a determination of whether that refusal was arbitrary, capricious, or unreasonable.
Although we hold that an agency's refusal to consent to adoption is reviewable pursuant to § 40-8-111(1)(c), MCA, we recognize that a different issue is presented in those cases in which parental consent has been withheld pursuant to § 40-8-111(1)(a), MCA. In those cases, we have recognized that because of the harshness of terminating parental rights, and the protected liberty interest in parenthood, the statutory requirements for parental consent must be satisfied before the child's best interests become paramount. See, e.g., In re V.R.O. (1991), 250 Mont. 517, 522, 822 P.2d 83, 86; In re S.T.V. (1987), 226 Mont. 18, 21, 733 P.2d 841, 842; In re Challeen (1977), 172 Mont. 362, 364, 563 P.2d 1120, 1121; In re Smigaj (1977), 171 Mont. 537, 539, 560 P.2d 141, 143; In re *697 Biery (1974), 164 Mont. 353, 359, 522 P.2d 1377, 1380. In cases in which agency consent is a prerequisite to adoption, however, the requirement of consent is merely an additional safeguard to the child's welfare. See, e.g., In re McKenzie (1936), 197 Minn. 234, 266 N.W. 746, 747; In re Harshey (1974), 40 Ohio App.2d 157, 318 N.E.2d 544, 548. In agency consent cases, therefore, the district court must retain the jurisdiction to review the agency's decision to determine whether it is arbitrary, capricious, or unreasonable. Without such judicial scrutiny, "agency consent becomes superior to all other considerations, even those which ... are clearly of the gravest importance to the whole adoption program." In re Haun (1972), 31 Ohio App.2d 63, 286 N.E.2d 478, 481.
Our decision in this case is clearly in accord with the case law of other jurisdictions that have reviewed similar mandatory consent statutes. In fact, most courts, faced with similar statutory directives, have provided for judicial scrutiny of agency consent:
In some jurisdictions, the specific mandatory terms of adoption statutes deprive a court of jurisdiction to render a judgment on an adoption petition without the consent of the agency or institution having the legal custody, and the right to consent to the adoption, of a child whose adoption is sought, at least where the concerns of the agency involved do not constitute arbitrary or unreasonable concerns. Other courts have determined that even so-called mandatory language of an adoption statute does not deprive the court of jurisdiction to determine an adoption petition where the best interests of the child are at stake.

2 Am.Jur.2d Adoption § 94 at 987 (1994) (emphasis added) (citations and footnotes omitted). See also 2 C.J.S. Adoption of Persons § 55 at 473-74 (1972). Most courts that address the issue of agency consent cite In re Haun (1972), 31 Ohio App.2d 63, 286 N.E.2d 478. In Haun, the Ohio Court of Appeals was called upon to interpret a provision of the Ohio adoption act which provided that absent agency consent no final decree of adoption could be entered. That court held:
[T]he requirement of agency consent was not intended by the legislature to give an unnatural parent an arbitrary, unreasonable or capricious power to defeat judicial review and, coincidentally, impede, in a specific case as in this instance, the objectives of securing qualified adoptive parents and promoting the best interests of a child available for adoption.
Haun, 286 N.E.2d at 481. Other courts, in accord with Haun, have held that a facially absolute requirement of agency consent does not deprive a trial court of jurisdiction to review agency denial of consent. See, e.g., In re Roberts (Ala.Civ.App.1977), 349 So.2d 1170, 1172; Stines v. Vaughn (1974), 23 Ill.App.3d 511, 319 N.E.2d 561, 567; Stout v. Tippecanoe County Dep't of Pub. Welfare (1979), 182 Ind.App. 404, 395 N.E.2d 444, 451; Fleming v. Hursh (1965), 271 Minn. 337, 136 N.W.2d 109, 113; M. v. Family & Children's Serv., Inc. (1974), 130 N.J.Super. 214, 326 A.2d 74, 77; Oxendine v. Catawba County Dep't of Social Servs. (N.C.1981), 303 N.C. 699, 281 S.E.2d 370, 376; State ex rel. Dep't of Inst., Social and Rehab. Servs. v. Griffis (Okla. 1975), 545 P.2d 763, 768. In those cases in which the agency's refusal to consent is contrary to the best interests of the child, courts recognize that "the trial court is wholly justified in proceeding as if the consent which ought to have been given had been given." McKenzie, 266 N.W. at 748.
In this case, because of the District Court's erroneous conclusion that § 40-8-111(1)(c), MCA, precluded it from reviewing Will's petition, the court did not undertake a hearing to determine whether the agency's refusal to consent was arbitrary, capricious, or unreasonable. Based on our holding that an agency's refusal to consent is subject to judicial review, and based on our holding that such review cannot be made without a determination of the child's best interests, we reverse the order of the District Court which granted DFS's motion to dismiss and remand to the District Court for a hearing to determine whether the agency's refusal to consent to Will's petition for adoption was arbitrary, capricious, or unreasonable.

*698 ISSUE 2
Did the District Court err when it concluded that pursuant to § 40-8-108, MCA, agency placement was a prerequisite to adoption?
In its order dismissing Will's petition for adoption, the court concluded that pursuant to § 40-8-108, MCA, a district court does not have statutory authority to overrule an agency's placement decision and to place a child elsewhere for adoption. As stated above, this Court reviews a district court's conclusions of law to determine if they are correct. In re Estate of Alcorn (1994), 263 Mont. 353, 355, 868 P.2d 629, 630.
Section 40-8-108, MCA, provides that:
A child may be placed for adoption only by:
(1) the department;
(2) a licensed child-placing agency; or
(3) the child's parents.
Section 40-8-103(14), MCA, defines "placement for adoption" as "the transfer of physical custody of a child with respect to whom all parental rights have been terminated and who is otherwise legally free for adoption to a person who intends to adopt the child."
In Lewis v. Catholic Social Services (1992), 253 Mont. 369, 833 P.2d 1023, this Court interpreted § 40-8-108, MCA, to constrain courts from effecting placement of children for adoption. We stated:
Section 40-8-108, MCA restricts who may place a child for adoption and does not include courts in its list of who may place a child for adoption. Therefore it is clear that the courts could not place Baby Girl W. with the Lewises.
Lewis, 253 Mont. at 372, 833 P.2d at 1025. In addition, we held that Montana's adoption statutes and public policy compelled a holding that the agency's placement decision was not subject to judicial review. Lewis, 253 Mont. at 372, 833 P.2d at 1025. The Lewis decision was followed by this Court in In re F.H. (1995), 272 Mont. 342, 901 P.2d 96.
Our decisions in Lewis and F.H. failed to recognize, however, that pursuant to Montana's statutory adoption scheme, placement is not a prerequisite to a district court's determination of the merits of an adoption petition. Section 40-8-121, MCA, sets forth the requirements for a petition for adoption. That section provides:
(1) A petition for adoption must be filed in duplicate, verified by the petitioners, and must specify:
(a) the full names, ages, and place of residence of the petitioners and, if married, the place and date of the marriage;
(b) when the petitioners acquired or intend to acquire custody of the child and from what person or agency;

(c) the date and place of birth of child, if known;
(d) the name used for the child in the proceeding and, if a change in name is desired, the new name;
(e) that it is the desire of the petitioners that the relationship of parent and child be established between them and the child;
(f) a full description and statement of value of all property owned or possessed by the child;
(g) facts, if any, which excuse consent on the part of a parent to the adoption.
(2) One copy of the petition must be retained by the court. The other must be sent to the department of public health and human services or to the child-placing agency participating in the adoption proceeding.
(3) Any written consent required by this part may be attached to the petition or may be filed after the filing of the petition, with the consent of the court.
(Emphasis added.) Although, pursuant to § 40-8-121, MCA, the petitioner is required to file a copy of the requisite consent to adoption, there is no parallel requirement that the petitioner file evidence of placement of the child prior to the filing of the petition. Instead, the statute requires only that the petitioner specify when and from whom he or she will acquire custody of the child. Section 40-8-121(1)(b), MCA. Because placement of the child by DFS, a licensed child-placing agency, or the child's parents, is not a prerequisite to the filing of a petition for adoption, the district court clearly has authority to review the merits of a petition without evidence of such placement.
*699 The same conclusion was reached by the Court of Appeals of Indiana in Stout v. Tippecanoe County Department of Public Welfare (Ind.Ct.App.1979), 182 Ind.App. 404, 395 N.E.2d 444, 451-52. In Stout, the County Department of Public Welfare maintained that without placement of a child for adoption "the statutory law provides that no petition for adoption can be granted." Stout, 395 N.E.2d at 451. The Indiana Court of Appeals, however, reviewed Indiana's adoption scheme in its entirety and concluded that although there was a statute mandating how placement should be made, there was no requirement that the court find that such placement had been effected prior to the court's review of the petition for adoption. On the issue of placement, the court stated:
Although certainly a desirable method of realizing the best interests of the child, placement by a licensed agency or department is not made a condition to the trial court's decision of the merits of an adoption.
....
In those jurisdictions we have found in which placement by the welfare department or child-placing agency is a prerequisite to adoption, the statutes specifically provide for this requirement. We therefore hold placement by the Department in the Stout's home was not a prerequisite to the trial court's consideration of the merits of Stout's petition.
Stout, 395 N.E.2d at 451-52 (footnotes omitted). In arriving at its conclusion, the court cited statutes from Kentucky, Delaware, and Connecticut which clearly required that a petitioner could not file a petition for adoption until the child had been properly placed in his or her home for adoption. Stout, 395 N.E.2d at 452, fn. 13. Montana's statutes, like Indiana's, do not have such a requirement.
Furthermore, as we stated above, where the best interests of the child are at stake, a district court clearly retains jurisdiction to review an agency's decision. State ex rel. Frederick (1946), 119 Mont. 143, 150, 173 P.2d 626, 629. Therefore, in the event that an agency's placement decision is at issue, we hold that the district court has jurisdiction to review that decision to ensure that it is not arbitrary, capricious, or unreasonable. To the extent that our prior opinions in Lewis and F.H. conflict with this holding, we reverse those cases.
On the basis of our holding that the District Court has jurisdiction to review DFS's refusal to consent to Will's petition for adoption of M.L.M. to determine whether that refusal was arbitrary, capricious, or unreasonable, and on the basis of our holding that the District Court has jurisdiction to review Will's petition for adoption without evidence that DFS placed M.L.M. with Will for adoption, we reverse the order of the District Court which granted DFS's motion to dismiss. We remand this case to the District Court for a hearing to determine whether the agency's refusal to consent to Will's petition for adoption was arbitrary, capricious, or unreasonable, and if so, to decide the merits of Will's petition.
HUNT, NELSON and ERDMANN, JJ., concur.
LEAPHART, Justice, specially concurring.
I concur in the Court's opinion. Although I agree that § 40-8-108, MCA, does not require agency placement as a prerequisite to adoption, I have concerns as to the implications of our decision. We have held that Nicole Will could file a petition to adopt M.L.M., and that the court had jurisdiction to review her petition despite the fact that the agency had not placed the child with Will for adoption. Although Will had significant connections with the child in question, Will was neither a relative nor a foster parent of M.L.M. The question thus arises, are there any restrictions as to who can file a petition for adoption and thereby invoke the court's jurisdiction to review an agency denial of that petition? Is there any reason that a complete stranger could not obtain information about children in the custody of DFS and then file a petition to adopt one or more of those children? If DFS refuses consent, the petitioner could then seek judicial review. Likewise, there appears to be no restriction on the number of couples that could petition to adopt the same child. Given the number *700 of couples seeking to adopt children, it is certainly not hard to envision a situation where three or more deserving couples file petitions to adopt the same child thus creating a "bidding war" as to who will provide the biggest house, best education, health care, etc. Since there are no legal criteria to determine which of several meritorious petitions should be granted, any decision by DFS to choose one couple over another would be subject to being challenged as "arbitrary and capricious." Those petitioners who are unsuccessful in their bid at the agency level would then be off to district court to take their chances with the judge. Although I do not see anything in the law which would prevent the above scenario, I doubt that such a "competitive," litigious adoption procedure is any more in the child's best interests than the prior procedure under which agency consent was absolute and beyond judicial review.
TURNAGE, C.J., and GRAY, J., join in the specially concurring opinion of LEAPHART, J.