No. 98-109

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 27N

IN RE THE MATTER OF

ADOPTION OF M.E.S.,

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Neil D. Enright, Towe, Ball, Enright, Mackey & Sommerfeld, Billings, Montana

For Respondent:

Mary Rose Heller, Department of Public Health & Human Services, Child and Family Services Division, Helena, Montana (DPHHS); Damon Gannett, Gannett Law Firm, Billings, Montana (guardian ad litem)

Submitted on Briefs: October 15, 1998

Decided: February 18, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be**

filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2. Kathleen Smith (Appellant), maternal grandmother of M.E.S., a minor child, appeals from the November 19, 1997 order of the Thirteenth Judicial District Court, Yellowstone County, denying her petition for adoption of M.E.S. We affirm.

¶3. Appellant's daughter is Kristin Smith (Kristin) who is twenty years old. Kristin began using drugs at the age of fourteen. In July 1993, at age fifteen, Kristin ran away from home. In October 1993, Kristin discovered she was pregnant while being treated for drug addiction at Cedar Mountain Treatment Facility in Cody, Wyoming. After three months of treatment, Kristin went back to her home in Billings and gave birth to M.E.S. in May 1994. Shortly thereafter, Kristin relapsed and began to neglect M.E.S. The Department of Health and Human Services (DPHHS) removed M.E.S. from Kristin's care and placed M.E.S. in the care of Kristin's older sister and brother-in-law, Jennifer and Steve Feuerstein. Within a number of months, Jennifer and Steve Feuerstein divorced making this arrangement unworkable. The DPHHS placed M.E.S. in the care of Steve Feuerstein's parents, Vic and Diana Feuerstein, as foster parents. Appellant had regular visitation with M.E.S.

¶4. In February and October 1995, the Rimrock Foundation in Billings evaluated Kristin's chemical dependency and psychosocial status. As a result of these and other evaluations, Kristin was declared unfit to parent M.E.S. and her parental rights were officially terminated by judicial order on March 1, 1996.

¶5. Meanwhile, in March 1995, Appellant began the process of applying for adoption of M.E.S. The DPHHS conducted an extensive adoptive home study of Appellant spanning the period from August 1995 to April 1996. Despite identifying Kristin as "a trigger in [Appellant's] life who is unpredictable," and despite Appellant's past problems with herself and her family, the DPHHS noted that Appellant had made positive changes in her life, was successfully raising her 13 year-old daughter, Sara, and that strong support among family, friends, and professionals would help Appellant provide a stable and nurturing home for M.E.S. The DPHHS ultimately gave a favorable recommendation for approval of Appellant as a possible adoptive parent for M.E.S. However, the DPHHS requested that Appellant undergo further

evaluation by a licensed clinical psychologist.

¶6. Dr. William Woolston performed an evaluation of Appellant and ultimately concluded that Appellant may be considered as an appropriate parent for M.E.S. However, Dr. Woolston tempered his recommendation with the following concerns: (1) Appellant's ability to raise M.E.S. as a single parent; (2) Appellant's emphasis on how placement of M.E.S. with Appellant would be good for her and her daughter without explaining how placement of M.E.S. with Appellant would be in the best interest of M.E.S.; (3) that Appellant may see M.E.S. as an opportunity to prove her worth as a parent and to assuage her guilt over having failed to protect her eldest daughters; (4) that M.E.S. may have bonded to her foster parents and that removal from this home may harm M.E.S.; (5) that Appellant may not be fully aware of her contributions to her daughters' problems and, hence, may not be accepting of feedback or assistance in parenting M.E.S.

¶7. In April 1996 and August 1997, Dr. Donna Veraldi, a licensed clinical psychologist, conducted psychological evaluations of M.E.S. In the first evaluation, Dr. Viraldi reported that M.E.S. was an overactive child and needed structure and permanency with one set of primary caretakers. In the second evaluation, Dr. Viraldi noted that M.E.S. appeared to be much more settled, appeared industrious in her play, and was willing to follow the limits that were set. Dr. Viraldi opined that M.E.S. appeared to live in a household where she related to adults as parents, where she had structure, and where her surroundings were predictable. Dr. Veraldi did not recommend another move for M.E.S.

¶8. In November 1996, the DPHHS considered Vic and Diana Feuerstein as possible adoptive parents of M.E.S. The DPHHS conducted an adoptive home study of the Feuersteins. The DPHHS reported that M.E.S. had been in the Feuersteins' care since October 1994, a period of approximately two and one half years. The DPHHS reported that the Feuersteins have grown attached to M.E.S. and that M.E.S. appeared happy, comfortable, and confident in their love. The DPHHS reported that several references had commented upon the Feuersteins' strong morals and family values. The Feuersteins had successfully raised two children. The DPHHS recommended that the Feuersteins be approved for possible adoption of M.E.S.

¶9. In December 1996, the DPHHS decided that it would not consent to Appellant's adoption of M.E.S. Sheila Howe, a social worker for the DPHHS, and Betty Petak,

the regional administrator for the DPHHS, both testified that this decision was the result of genuine and sincere consideration of all circumstances related to M.E.S.'s needs and the person best able to meet those needs. After careful thought and discussion among several agency workers involved in the case, the DPHHS determined that maintaining the stability of M.E.S. in her current placement fulfilled M.E.S.'s greatest need.

¶10. Appellant filed a petition for adoption in the District Court. The District Court reviewed the DPHHS's refusal to consent to Appellant's adoption of M.E.S. for a determination of whether the refusal was arbitrary, capricious, or unreasonable. *See* In Re M.L.M. (1996), 278 Mont. 505, 511, 926 P.2d 694, 697. In its order denying petition for adoption, the District Court adopted as its findings of fact and conclusions of law those proposed by the DPHHS. The court held that the agency's decision was not arbitrary, capricious, or unreasonable, and was in the best interest of M.E.S. The court emphasized the possibility of unhealthy contact between M.E.S. and her biological mother, Kristin, if Appellant were the adoptive parent of M.E.S. The court stated that M.E.S. "is a more fragile child than she might otherwise be because of the drugs [her mother used during pregnancy] and because of her multiple placements." The court noted that M.E.S. had been through "significant upheaval and was now in a stable placement." The court concluded, "The bottom line is that to make another change puts M.E.S. at too much additional risk."

¶11. The District Court's determination that the DPHHS did not act in an arbitrary, capricious, or unreasonable manner in withholding consent to Appellant's adoption of M.E.S. is a conclusion of law. We review a district court's conclusions of law to determine if they are correct. In Re M.L.M., 278 Mont. at 507, 926 P.2d at 695.

¶12. We have held that an administrative decision is arbitrary and capricious if it was not based upon a consideration of all relevant factors and if there has been a clear error of judgment. Skyline Sportsmen's Ass'n v. Board of Land Comm'rs (1997), 286 Mont. 108, 117, 951 P.2d 29, 35. The parties agree that the best interest of the child is of paramount concern in determining that child's adoptive placement. *See* In Re M.L.M., 278 Mont. at 507-11, 926 P.2d at 695-97. Having reviewed the record on appeal, we determine that the DPHHS considered all relevant factors concerning the best interest of M.E.S. We determine that the DPHHS did not err in its judgment when, upon a thorough investigation and careful thought on the matter, it decided that adoption by Appellant was not in M.E.S.'s best interest. We hold that

the District Court correctly determined that the DPHHS did not act in an arbitrary, capricious, or unreasonable manner in withholding consent to Appellant's adoption of M.E.S.

**¶13. Affirmed.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY