STATE ex rel. FREDERICK et al., Relators, v. DISTRICT COURT of the FOURTEENTH JUDICIAL DIST., MEAGHER COUNTY et al., Respondents.

No. 8666

Submitted June 20, 1946. Decided June 29, 1946.

173 Pac. (2d) 626

144

■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■

Mr. Emmet O'Sullivan, of Harlowton, and Messrs. Rankin and Acher, of Helena, for relator.

Mr. Ralph J. Anderson, of Helena, for respondents.

MR. JUSTICE MORRIS delivered the opinion of the Court.

Petition for writ of mandamus or other supervisory writ.

The petition in this matter alleges that on November 13, 1942, the district court in and for Meagher county made and entered an order adjudging the four minor children of Pat G. and Frances B. Woods dependent and neglected and awarded the care and custody of such children to the "division of Child Welfare Service of the Department of Public Welfare of the State of Montana." This state institution will, for the sake of brevity, be hereinafter referred to as the Welfare Department. It appears from the record that in the proceeding by which the children mentioned were found to be dependent and neglected, all interested parties were brought within the jurisdiction of the district court by appropriate service. In the order awarding the custody and care of the children to the Welfare Department, that department, or its legal representative, was "authorized to appear in any court, where adoption proceedings are pending, and assent to the adoption of the said children."

Thereafter on the 20th day of August, 1943, the district judge in and for Meagher county, after hearing, at which all interested parties were present or were represented, the judge, with the consent of the Welfare Department, made and entered an order authorizing the four children be adopted by the petitioners. Thereafter on December 31, 1943, the petitioners filed a

motion praying that the order of adoption made and entered August 20, 1943, be vacated. Judge W. C. Husband of the fourteenth judicial district having disqualified himself, called in Judge George W. Padbury of the first judicial district to hear and decide the motion. After hearing, Judge Padbury made and entered an order vacating and annulling the order of adoption, incorporating in such order a provision that the "status of said children be the same as their status was immediately prior to August 20th, 1943." The 20th of August, 1943, it will be noted, was the date of the order approving the adoption to the petitioners, and in restoring the status of the children to their status immediately prior to that date was in effect to re-award their custody to the Welfare Department. Thus far in this proceeding all interested parties agree as to the facts enumerated above. It is further alleged in the petition now before us that after the order of adoption was vacated as above mentioned the petitioners again petitioned the district court in and for Meagher county praying that they be permitted to re-adopt the two youngest Wood children, Thomas Russell and Jerry Calvin. It was alleged in that petition that the Fredericks at all times herein mentioned had desired to keep these two youngest children, but were advised that the adoption order would have to be vacated in full if at all. September 10, 1945, the Fredericks filed their petition praying the court for an order declaring the two youngest Wood children to be the adopted children of the petitioners. In that petition it is alleged that the mother's consent to the adoption had been obtained in writing, but the father's consent had not by reason of the inability of the petitioners to obtain his address.

When the petition to re-adopt the two youngest Wood children came on for hearing October 9, 1945, the Welfare Department appeared by a representative accompanied by counsel and moved the court to dismiss the petition, on the ground first, that the Welfare Department had withheld its consent to the adoption, and the court was without jurisdiction to proceed without such consent, and on the further jurisdictional ground

predicated upon the petitioners not being residents of Montana. The court indicated that it thought best to hear the testimony and defer ruling on the motion, and that was the course taken. After the evidence was all in the court requested counsel to submit briefs, and thereafter granted the motion to dismiss, and the proceeding followed.

The only question we have to determine is as to whether the consent of the Welfare Department was necessary before the court could proceed in the matter.

Section 5859, Revised Codes, as amended by Chapter 115 of the 1941 Session Laws, provides in part that "A legitimate child cannot be adopted without the consent of the parents, if living * * *."

By analogy we think that when a child is found by a court ▉ decree, such as the children involved here, to be dependent and neglected, and their care and custody are awarded to a state agency by the court, such children are as free from parental supervision as when placed in the custody of adopted parents. There are certain exceptions to that proposition enumerated in section 5859, as amended, which render it unneecssary to have the consent of one or both of the parents, such as drunkenness, deprivation of civil rights, adjudged guilt of adultery or cruelty, when the parents have been deprived by a court order of the custody of the children on account of parental neglect, or abandonment, caused the child to be maintained in some state agency for more than a year without contributing to its care, or if the parents have been cited to show cause why they should not consent to the adoption of a child and default as to such order. In such circumstances the adoption proceedings may be proceeded with without parental consent. Section 5864, Revised Codes, provides, "The parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibilty for, the child so adopted, and have no right over it." An amendment by Chapter 116 of the 1943 Session Laws has no application here. When the court by its decree declared the minors involved here were dependent and

neglected children, and the parents consented in writing that their children should be so declared, and where the parents were divorced for cruelty, and later consented that the children might be adopted by the Fredericks, it is futile to contend that the parents retained any right to say what the state of Montana should do with the children. Their rights as the natural guardians of the children were all foreclosed under section 5864, supra, when the court decree awarded the custody and care of the minors to the Welfare Department and expressly gave that department authority to consent to their adoption. The care and custody of the children was entirely in the hands of the Welfare Department and that department alone is responsible to the state and to the law for the proper care of the minors.

We think the provisions of the Welfare Act, Chapter 82 of the 1937 Session Laws, impels the foregoing conclusions. Section I of Part II of the Act provides, ''The state department and county departments of public welfare are hereby authorized and charged with the administration and supervision of general relief under the powers, duties and functions as prescribed in Part I of this act.'' By paragraph (b) of Section VII, Part I, the state department of public welfare is charged to ''Administer or supervise all child welfare activities * * *; the care of dependent and neglected * * * children in foster family homes, especially children placed for adoption * *. *.''

By paragraph (a) of Section XI, Part I it is provided that ''The county department of public assistance shall be charged with the local administration of all forms of public assistance and welfare operations in the county including * * * aid to dependent children * * *.''

Paragraph (a) of Section I, Part IV, as amended by Chapter 213, 1943 session, defines a dependent child as ''a child under the age of eighteen (18) who has been deprived of parental support or care'' on certain grounds therein specified. It is well to keep in mind that even parents may be deprived of the custody of a child without their consent for specific reasons mentioned in the statutes.

Paragraph (b) of Section II, Part IV provides, "The county department of public welfare shall be charged with the local administration and supervision of aid to dependent children, subject to the powers, duties and functions prescribed for the county department in Part I of this act."

Section V of Part IV sets up the manner of investigation to be made by the county workers when essential to the determination of the dependency of a child. The home of the child shall be investigated and likewise the person who has the custody of such child. This group of statutory provisions applies specifically where application is made for aid for a child, but they are parts of the Welfare Act and aid in presenting the complete picture of the Act as it relates to dependent children.

Paragraph (d) of Section IV, Part VI under the heading of "Powers and Duties of the State Department" provides that that department shall "Administer or supervise all child welfare activities of the state except such child welfare activities as are administered by the state board of health."

Paragraph (e) of the same section provides that the state department shall "Make provisions for establishing, extending and strengthening child welfare services for the protection and care of homeless, dependent and neglected children and children in danger of becoming delinquent, including those in public and private institutions."

Paragraph (g) of the same section provides in part, the department shall "Enforce all laws pertaining to children and take the initiative in all matters involving the interest of illegitimate, dependent, neglected and delinquent children where adequate provision therefor has not been made by law; * * *."

Paragraph (j) of the same section provides that the department shall "Keep records of and supervise the case of dependent, neglected, and delinquent children placed in foster family homes and institutions until such children are legally adopted or reach their majority."

Then follows paragraph (k) of the same section and particular attention is called to this provision of the Welfare Act

by reason of the alleged conflict between the Welfare Department and the district court in the matter of control over the adoption of minor children. The paragraph is as follows: "Nothing in this act shall be construed as authorizing any state or county official, agent or representative, in carrying out any provisions of this act, to take charge of any child over the objection of either of the parents of such child, or the person standing in loco parentis to such child, except pursuant to a proper court order." Such is the expressed will of the legislative department of the state, and its commands are addressed to all officials who have any part in carrying into effect legislative acts, relating to dependent and neglected children.

In the case of In re Metcalf's Estate, 93 Mont. 542, 548, 19 Pac. (2d) 905, 907, this court said: "Whenever the Legislature has expressed its will upon any subject, the duty is enjoined upon the courts to accept its expression as the law on that subject and determine controversies arising with respect to it accordingly." We see no sound reason why the Legislature should not repose the same right relative to giving consent to the adoption of children placed in an agency of the state as the parents possess before the custody of children is taken from them. The Welfare Department is in loco parentis to the children involved here. The Welfare Department has no power such as the district court possesses to approve the adoption of a child, but only to grant or withhold consent to the adoption of a minor legally in its custody. This case is distinguishable from that of State ex rel. Sheedy v. District Court, 66 Mont. 427, 213 Pac. 802, in that here, in addition to being in loco parentis to the children, the law expressly, as hereafter pointed out, confers upon the Welfare Department the right, power and authority to assent to their adoption.

In the case of In re Chambers, 80 Cal. 216, 22 Pac. 138, the Supreme Court of California had under consideration the legality of the proceedings for adoption of a minor child taken from an orphans' asylum with the consent of the president of the .institution. In the proceedings for adoption all the

things required by the statutes of California relative to adoption were complied with except no formal consent. was obtained from the "managers" of the asylum. When the matter was before a judge of the superior court relative to the adoption proceedings, the judge advised the parties who desired to adopt the child that consent of the authorities of the asylum was not necessary. Some time subsequent to that proceeding and after the minor had been taken in custody by the parties who had applied for an adoption order, a writ of habeas corpus was sued out and upon its coming before the Supreme Court that court held that there had been no adoption and issued an order directing the orphan be returned to the asylum. The situation of the minor in that case was pratically the same as the four minors involved here and we consider the case directly in point on the question in this case as to the necessity of having the consent of the Welfare Department to the adoption. To the same general effect is Burger v. Frakes, 67 Iowa 460, 23 N. W. 746, 25 N. W. 735.

It clearly appears to be the purpose of the statutes that dependent and neglected children awarded to the Welfare Department shall be placed in desirable homes as soon as suitable places are found for them and it is not reasonable to assume that either the district court or the department would willfully attempt to defeat that purpose. The Welfare Department's relation to the children involvel here, section 5859, supra, providing that a legitimate child cannot be adopted without the consent of its parents, the custody of dependent children awarded to the Welfare Department, and paragraph (k) of section IV, Part VI, all hereinbefore mentioned, must all be construed, keeping in mind that the power of the district court may at any time be invoked to guard and protect the welfare of the minor child. No statute may be so construed as to deprive the court of its jurisdiction in that respect. See section 10471, Revised Codes, which provides in part: "In any case where the court shall award any dependent child to the care and custody of any association or individual, in accordance with the provisions of

this act, the child shall, unless otherwise ordered, become a ward, and be subject to the guardianship of the association or individual to whose care it is committed. Such association or individual shall, by and with the consent of the court, have authority to place such child in a suitable family home, with or without any indenture, and may, by attorney or agent, appear in any court, where adoption proceedings are pending, and assent to its adoption. Such assent shall be sufficient to authorize the court to enter the proper order or decree of adoption.''

We hold, therefore, that the Welfare Department was clearly within its power when it refused to give its consent to the adoption of the two younger children by the petitioners, and that the district court was clearly justified in refusing to make the adoption order without such consent.

There is presented no question of fraud or arbitrary action on the part of the Welfare Department or that it is withholding its consent capriciously or without reasonable justification, as was the case of McKenzie v. State Board of Control, 197 Minn. 234, 266 N. W. 746, 104 A. L. R. 1460. Were such charges made a different case might be presented.

Since it is our opinion that the adoption proceeding could not be proceeded with when the Welfare Department withheld its consent, and there is no showing that the consent is being withheld arbitrarily or unreasonably, we deem it unnecessary to consider other questions argued.

The writ applied for is denied and the proceeding dismissed.

Mr. Chief Justice Lindquist and Associate Justices Adair and Angstman, concur.

Mr. Justice Cheadle.

Because of lack of time to study the foregoing decision, due to recess by the court, I reserve my opinion with the understanding that it shall become a part of the foregoing, or a dissent thereto.

Mr. Justice Cheadle, Justice (dissenting).

Disregarding the questionable validity of the original order

of adoption of the four children dated August 20, 1943, which is not involved in this appeal, the sole question for determination is whether the district court is without jurisdiction to hear and determine the application for adoption of the two younger children, dated September 10, 1945. That court dismissed the petition on the ground that it had no jurisdiction over the matter because the welfare department had withheld its consent to the adoption. In the order of dismissal, the court held, "that this court is without power or authority of law to make any order of adoption in that case for the reason that said order of adoption can not be lawfully made, given or entered without the assent of the division of child welfare service of the department of public welfare of the state of Montana."

The majority opinion poses the question thus: "The only question we have to determine is as to whether the consent of the Welfare Department was necessary before the court could proceed in the matter." The majority answer this by holding, "that the adoption proceeding could not be proceeded with when the Welfare Department withheld its consent."

The basis of reasoning of the majority appears to be the theory that by the order depriving the parents of the custody of the children and placing them in the custody of the welfare department, the department was placed in loco parentis; that because of such supposed relationship between the children and the department, the statutory provisions requiring consent of natural parents must be applied before an adoption can be validly sanctioned by the district court.

While the reasoning upon which the district court's order was based does not appear, apparently that court construed the provisions of section 5859, Revised Codes, as amended by Chapter 115, Laws of 1941, and section 10471, Revised Codes, as requiring the consent of the welfare department before adoption of children in its custody may be ordered. The section first mentioned provides: "A legitimate child cannot be adopted without the consent of its parents, if living; * * *" and provides certain exceptions which dispense with the neces-

sity of consent on the part of the parents. It further provides that a child kept in an orphans' home, asylum or agency, under certain circumstances, may be adopted with the consent of a majority of the board of trustees of said orphans' home, asylum or agency, without the consent of the parents. Section 10471 provides in part: "In any case where the court shall award any dependent child to the care and custody of any association or individual, in accordance with the provisions of this act, the child shall, unless otherwise ordered, become a ward, and be subject to the guardianship of the association or individual to whose care it is committed. Such association or individual shall, by and with the consent of the court, have authority to place such child in a suitable family home, with or without any indenture, and may, by attorney or agent, appear in any court, where adoption proceedings are pending, and assent to its adoption. Such assent shall be sufficient to authorize the court to enter the proper order or decree of adoption. * * * and the court may, at any time, require from such association or person a report or reports containing such information or statements as to the judge may seem proper and necessary to be fully advised as to the care, maintenance, moral, or physical training of the child, as well as the standing or ability of such association or individual to care for such child. The court may change the guardianship of such child, if at any time it is made clear to the court that the same is detrimental to the child or unsatisfactory to the court."

I think that the expression of this court in State ex rel. Sheedy v. District Court, 66 Mont. 427, 213 Pac. 802, 804, effectively disposes of the contention that consent of a guardian is necessary to confer jurisdiction upon the court to order adoption of the ward. There it is said:

"Under statutes similar to ours it has been held that notice to, or the consent of, the guardian of a minor is not required in a proceeding for his ward's adoption. (Citing cases.) For many purposes the legal guardian of a minor stands in loco parentis to his ward by virtue of his appointment; he has the

custody and care of the education of the minor and the care and management of his estate, until such minor arrives at the age of majority or marries, or until the guardian is legally discharged. (Rev. Codes 1921, sec. 10407.) If, clothed with these duties and prerogatives, he is not entitled to notice of adoption proceedings, with much stronger reasoning may it be said that one who stands only temporarily in loco parentis is not entitled to such notice.

"In view of what has been said above, we have no hesitancy in saying that neither relator's consent to the adoption of the minor children in question was necessary, nor was he entitled to notice of the hearing under the statute, and that, upon the filing of the petition for adoption and its presentation to Judge Lynch, he acquired jurisdiction to proceed in the matter and make the order of adoption."

I think that the case of McKenzie v. State Board of Control, 197 Minn. 234, 266 N. W. 746, 747, 104 A. L. R. 1460, comes closer to a correct exposition of the law governing the facts before us than has any case cited by respondents. The statute there under consideration provides that no adoption of a minor shall be permitted without the consent of his parents but that under certain conditions the consent of the parents "may be dispensed with, and consent may be given by the guardian, if there be one or if there be no guardian, by the state board of control." Mason's Minn. St. 1927, sec. 8626. In holding that the consent of the board of control is not necessary to confer jurisdiction upon the court, the Minnesota Supreme Court said:

"In furtherance of its design to protect the dependent child's welfare, the Legislature provided for the consent of the board or person having control of the child to its adoption. But it is readily apparent that this consent is not the same right as that exercised by the parents. It is significant that the statute denies the right of adoption when parents, not otherwise incapacitated, withhold their consent, while the consent of incapacitated parents 'may be dispensed with' and the consent

of the board of control or guardian 'may be given.' The consent of those in custody of the child is simply an additional safeguard to the child's welfare. With the child under the control of the state as it is, when in the custody of the state board or a guardian, its welfare is the state's paramount object.

"The reasons for requiring the consent of the guardian are set out In re Mair, supra [184 Minn. 29, 237 N. W. 596.]. It was there said that it might well be argued that those reasons do not apply to the board of control. May that board withhold its consent and thereby defeat the petition when the best interests of the child compel a court to find that failure to grant the petition would be inimical to the best interests of the child? We think it cannot so defeat the manifest purpose of the law. When we consider all of the manifold provisions of the juvenile court act together with the adoption statute, we find none of the reasons applicable to parents or to guardians to be persuasive as to the board. Jurisdiction is complete in the court, and it may proceed with the sole view to the best interests of the child. It need not dismiss on motion of the board, and it may disregard the board's refusal to consent in case that refusal is unreasonable."

Under our statutes the district courts are given exclusive jurisdiction over adoption proceedings, and this jurisdiction has in nowise been circumscribed or taken away by the provisions of the statutes creating the welfare department and prescribing its powers and duties. Under the holding of the majority opinion a district court, in any given adoption proceeding, may be effectively deprived of jurisdiction by the simple refusal of the welfare department to consent to the adoption proposed. Such is not the intention of the Act which contemplates the disposition of children subject to adoption in accordance with their welfare and best interests. It is and always has been the policy of the state to encourage and foster the adoption of homeless children where the circumstances of the case indicate adoption to be to the best interest of the child. Certainly adoption into a desirable home usually, for obvious

reasons, will be more conducive to the child's best interests than retention under the control of an agency of the state, which can at most place the child in temporary foster custody. To say that the welfare department *may* consent to the adoption of a child in its custody, is by no means to say that such consent *must* be given in order to confer jurisdiction upon the district court to make an order of adoption.

The apparent legislative intention in providing that the department may consent to the adoption, was that such consent might be given as against the parents, but not that it must be given to confer jurisdiction.

It is my view that the state welfare Act was enacted, in so far as it affects the adoption of a homeless child, to create an agency to investigate the circumstances of any proposed adoption and to give its advise to the court having jurisdiction. Since the welfare department is better equipped to investigate such circumstances, undoubtedly our district courts will and should place great reliance upon the department's recommendations.

It may well be that the court below, having heard evidence in the adoption proceeding and having considered the withholding of consent by the welfare department, in the exercise of a sound discretion, might have denied the application for adoption. In such case the court's ruling would not be disturbed on appeal. This court will not interfere with the action of the trial court in the exercise of its discretion, but here the trial court refused to exercise its discretion by refusing to accept jurisdiction of the cause, which I believe it had and has. Under the decision here arrived at, district courts can and may be deprived of jurisdiction in adoption proceedings, in all cases where the children involved are in custody of. the welfare department or other state agency. I am firmly of the belief that such result was not anticipated nor intended by the legislature, and is most certainly a dangerous departure from the policy heretofore existing in this jurisdiction.

It is my view that the trial court should be compelled to

accept jurisdiction of this matter and to hear and determine the same upon its merits.

Petition for rehearing denied October 25, 1946.