BRIDGES, C.J.,
for the Court:
¶ 1. This is an appeal from a judgment entered in the Chancery Court of Clarke County'terminating the parental rights of the natural mother, W.D.H., to two minor children, J.D.H. and R.D.H., and granting the adoption of the children by T.H. and S.H. No appeal is taken as to the termination of the parental rights of the natural father. The natural mother has perfected this appeal, in which she attacks the jurisdiction of the chancellor to consider the adoption petition on allegedly procedural deficiencies. After thorough consideration of the issues raised, we affirm.
FACTS
¶ 2. The following facts were gleaned by the chancellor after fourteen days of testimony and sixteen witnesses:
¶ 3. On June 4, 1992, the Department of Health Services (DHS) first became involved with J.D.H. and R.D.H., when witnesses reported the minor children were severely neglected by their natural mother, W.D.H., due to the deplorable conditions in which the children were living. The children were nineteen months old and eight months old. The initial plan of DHS was to restore the children to W.D.H. To meet its goal, a service agreement was developed by DHS and agreed to by W.D.H. in which W.D.H. would attend parenting classes addressing issues such as cleanliness, nutrition, budgeting, and discipline. W.D.H. failed to fulfil the service agreement.
¶ 4. Finding no improvement after monitoring W.D.H. for a month, DHS changed its plan to relative placement. DHS referred the case to the Newton County Youth Court which adjudicated the minor children severely neglected. The youth court placed legal custody of the minor children with DHS and physical custody of the children with the maternal grandmother. DHS continued its efforts to rehabilitate W.D.H. so she could be reunited with her children.
¶ 5. The placement of the children with the grandmother went well at first, but deteriorated when W.D.H. moved into her mother’s house. In Decemberl993, the conditions in the grandmother’s house were so abysmal the children were placed in an emergency shelter. No other suitable relative was found to care for the children. DHS changed its plan to return the children to a parent.
¶ 6. After a year and a half of supervision by DHS, there was no improvement in the minor children’s situation. In fact, the situation had worsened. Shortly after being placed in the emergency shelter, it was determined the children had been sexually abused while in the grandmother’s physical custody.
¶ 7. The minor children, three and two years old, were moved to a foster home in Jasper County, and then to the foster home of R.W.M., who was experienced in dealing with the special needs of sexually abused children.
¶ 8. J.D.H. and R.D.H. were placed in the home of T.H. and S.H. in March 1994. In June 1994, J.D.H. was returned to R.W.M.’s home to separate the children due to J.D.H. sexually acting out on R.D.H. R.D.H. remained with T.H. and S.H.
¶ 9. In July 1994, the Newton County Youth Court determined the minor children should be reunited and placed R.D.H. with J.D.H. in the home of R.W.M.
¶ 10. Despite the continued efforts of DHS to rehabilitate W.D.H., DHS determined that to return the children to a parent was no longer a viable option based on W.D.H.’s acknowledgment that she was unable to care for her children. DHS’s final plan for J.D.H. and R.D.H. was changed to long term foster care in anticipation of a time when the children would be old enough to have more contact with their mother without the risk of their being hurt.
¶ 11. In August 1995, T.H. and S.H. were awarded physical custody of the chil *189 dren by the youth court. In January 1997, the youth court awarded T.H. and S.H. legal custody of the children. W.D.H. has exercised her visitation rights seeing the children twice a month for three hours per visit while the children have been placed in the home of T.H. and S.H.
¶ 12. In December 1995, R.W.M. filed a complaint for adoption of the two minor children in the Chancery Court of Clarke County, the county of residence of R.W.M. W.D.H. joined in the complaint requesting her parental rights be terminated to enable R.W.M. to adopt J.D.H. and R.D.H. Because T.H. and S.H. had physical custody of the children, they were named as defendants.
¶ 13. T.H. and S.H. requested the adoption action be transferred to the Chancery Court of Newton County, which had had jurisdiction over the children for over three years, or to the Chancery Court of Smith County, the county in which the children were physically located. The chancellor denied the motion for change of venue or to transfer action and the action remained in Clarke County.
¶ 14. In their answer and affirmative defenses to the complaint for adoption and counter complaint,[1] T.H. and S.H. sought termination of the parental rights of the natural parents of the two minor children and adoption of the minor children.
¶ 15. Prior to trial, the chancellor granted W.D.H.’s motion for determination of issues to be tried first, requiring T.H. and S.H. to present their evidence relating to the termination of parental rights of W.D.H. prior to the presentation of evidence by W.D.H. and R.W.M. relating to the original adoption petition.
¶ 16. After the trial was commenced and several days of testimony had been given, W.D.H. raised the issue of the court’s jurisdiction to proceed with T.H. and S.H.’s termination of parental rights action in light of the bifurcation of the trial proceeding. The chancellor found the court had jurisdiction over the termination of parental rights action in that the action was necessarily a part of the adoption proceeding due to W.D.H.’s opposition to the adoption of J.D.H. and R.D.H. by T.H. and S.H.
¶ 17. Following the presentation of evidence relating to the termination of parental rights, the chancellor rendered an opinion and judgment terminating the parental rights of the minor children’s natural father pursuant to Miss. Code Ann. § 93-15-103(3)(a) (Rev.1994). No appeal was taken therefrom. Further, the chancellor found there were substantial grounds in the record for W.D.H.’s parental rights to be terminated but deferred making such termination until the chancellor heard the adoption portion of the trial to enable the chancellor to determine whether continued contact with W.D.H. was in the best interest of the children.
¶ 18. Prior to the conclusion of testimony from R.W.M. and W.D.H. regarding the original adoption action, R.W.M. filed a motion to withdraw her complaint for adoption. Thereafter T.H. and S.H. presented testimony in support of their counterclaim for adoption.
¶ 19. At the conclusion of the trial, the chancellor ordered the parental rights of W.D.H. be terminated under Miss.Code Ann. § 93-15-103 (Rev.1994) based on the following findings:
These minor children were removed from the home of their natural mother and they will not be able to ever be returned to her home unless they are of an age that they are able to care for themselves and care for her. Should they have extensive contact with their mother at this time it is likely that they would suffer additional neglect.
The children have been in the care of the Department of Human Services and supervised by the Department since June of 1992. The Department maintained legal custody of the children until *190 January of 1997. During all of this time the Department diligently worked for a plan to restore and rehabilitate the relationship between the mother and the children and that has not been possible. [W.D.H.] is unlikely to change anytime in the future to the point that she would be able to care for her children.
Based on testimony by the guardian ad litem regarding her observations of the children with W.D.H. during visitations, the chancellor found a substantial erosion of the relationship and it was in the best interest of the children to have the parental rights of W.D.H. terminated.
¶ 20. The chancellor then ordered the termination of W.D.H.’s parental rights and granted the adoption petition of T.H. and S.H. finding the adoption to be in the best interest of the children.
¶ 21. After her motion for a new trial was denied, W.D.H. perfected this appeal asserting (1) the trial court lacked subject matter jurisdiction to grant the counterclaim for adoption and (2) the trial court lacked jurisdiction to terminate her parental rights. Finding no merit to these assignments of error, we affirm.
STANDARD OF REVIEW
¶ 22. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Bowers Window and Door Co. v. Dearman, 549 So.2d 1309, 1312-13 (Miss.1989).
ARGUMENT AND DISCUSSION OF LAW
I. DID THE TRIAL COURT HAVE SUBJECT MATTER JURISDICTION TO GRANT THE COUNTERCLAIM FOR ADOPTION?
¶ 23. W.D.H. argues the counterclaim for adoption was jurisdictionally defective because T.H. and S.H. did not sign the counterclaim under oath and failed to attach to the counterclaim the doctor’s certificates and a sworn statement of all property owned by the minor children as statutorily required.
¶ 24. Miss.Code Ann. § 93-17-3 (Rev.1994) provides the requisites for filing an adoption proceeding:
Any person may be adopted in accordance with the provisions of this chapter in term time or in vacation ... by a married person whose spouse joins in the petition, provided that the petitioner or petitioners shall have resided in this state for ninety (90) days preceding the filing of the petition.... Such adoption shall be by sworn petition filed in the chancery court of the county in which the adopting petitioner or petitioners reside or in which the child to be adopted resides or was born, or was found when it was abandoned or deserted, or in which the home is located to which the child shall have been surrendered by a person authorized to so do. The petition shall be accompanied by a doctor’s certificate showing the physical and mental condition of the child to be adopted and a sworn statement of all property, if any owned by the child. Should the doctor’s certificate indicate any abnormal mental or physical condition or defect, such condition or defect shall not in the discretion of the chancellor bar the adoption of the child if the adopting parent or parents shall file an affidavit stating full and complete knowledge of such condition or defect and stating a desire to adopt the child, notwithstanding such condition or defect....
¶ 25. This Court finds T.H. and S.H. complied with the above enunciated statutory guidelines, practice and procedure for the reasons cited hereinafter.

A. APPELLEES’ FAILURE TO SIGN AND SWEAR TO THE COUNTERCLAIM

¶ 26. W.D.H. asserts the failure of T.H. and S.H. to execute the counterclaim un *191 der oath at the time of filing deprives the chancery court of jurisdiction over the adoption proceeding. The answer and affirmative defenses to the complaint for adoption and the counter complaint for adoption was prepared as one pleading and signed by the attorney for T.H. and S.H. The record reveals that before testifying in support of the counterclaim, S.H. was placed under oath and swore the statements and allegations contained therein were true and correct:
Q. [S.H.], are you and your husband, [T.H.] the counter-plaintiffs in a counter complaint that was filed in this Court seeking the adoption of [J.D.H. and R.D.HJ?
A. Yes, we are.
Q. The counter complaint that has been filed of record in this action, are you willing to swear before the Court today that the statements and allegations contained therein are true and accurate and correct?
A. Yes, I am.
Q. Will you so do. Do you swear that those are true and correct statements contained in your counter complaint for adoption?
A. Yes.
And on direct examination, T.H. testified:
Q. Do you understand that the information — first of all, let me ask you this. The information and allegations that are set forth in your counter complaint for adoption that’s filed of record in this case, today, would you swear to the Court that that information is true and correct?
A. Yes, sir.
The counterclaim was duly sworn to by T.H. and S.H. Moreover, W.D.H. did not object in a timely fashion to the utilization of this procedure by T.H. and S.H. to swear to the counterclaim for adoption. Accordingly, there is no merit to this argument.

B. ABSENCE OF DOCTOR’S CERTIFICATES AND STATEMENT OF PROPERTY

¶ 27. To support her argument that the omission of the doctor’s certificates and the statement of property from the counterclaim removes the chancery court’s jurisdiction over the adoption proceedings of J.D.H. and R.D.H., W.D.H. relies on In the Matter of Adoption of F.N.M., 459 So.2d 254 (Miss.1984), in which the Mississippi Supreme Court affirmed the lower court’s dismissal of a petition for adoption. By requesting the chancellor to order the examination of the child by a doctor, the supreme court found the petitioners in Adoption of F.N.M. failed to meet the “jurisdictional” requirement in § 93-17-3 that the petition be accompanied by a doctor’s certificate showing the physical and mental condition of the child to be adopted.
¶ 28. Just four years later, the supreme court refused to characterize the same alleged deficiencies of which W.D.H. complains (petition not properly sworn to, failure to attach doctor’s certificate to petition, and failure to attach sworn statement of property owned by child) as “jurisdictional.” In the Matter of the Adoption of R.M.P.C., 512 So.2d 702, 706 (Miss.1987), the court explained the failure to adhere to the procedural requisites for initiating an adoption action did not rise to the level of depriving subject matter jurisdiction upon the trial court:
The four problem areas asserted by [Appellant], however, are not jurisdictional in the above sense. To make this point clear, we need to consider the nature of the concept of jurisdiction. Subject matter jurisdiction has reference to the power and authority of a court to entertain a case at all. Ordinarily, the existence of that authority turns on the nature of the case, either by reference to the primary right asserted or the remedy or relief demanded. Subject matter jurisdiction, of course, cannot be waived. Here, that matter is of no concern to us *192 for adoption cases are well within the jurisdiction of the Chancery Court.
We have the unfortunate habit of using the terra jurisdictional when referring to functionally different requisites to suit, matters of pleading and practice .... [MJatters of this sort may aid a party only if timely raised or noticed by the Court.
(citations omitted). The failure to adhere to a statutory requisite to an adoption proceeding pertaining to practice and procedure may be sufficient to deny adoption if timely asserted The record reveals the alleged deficiencies were not brought to the attention of the trial court until fourteen days of testimony had been heard. After T.H. and S.H. presented testimony in support of their counterclaim for adoption, W.D.H. moved to dismiss the counterclaim alleging the doctors’ certificates were not attached as required by statute. Denying the motion to dismiss, the chancellor found the counterclaim filed by T.H. and S.H. referred to Exhibits “A” and “B” as physician’s certificates showing the physical and mental condition of J.D.H. and R.D.H.; numerous persons had inspected and copied the court file; the clerk could not state with certainty the exhibits were not attached to the pleading when filed with the court; and no party would be prejudiced by the reopening of the case to allow the attachment of the physician’s certificates to the counterclaim. The chancellor further found the doctor’s certificates attached to the original complaint for adoption filed by R.W.M. and W.D.H. remained part of the court file and could be incorporated into the counterclaim.
¶ 29. Similarly, W.D.H. argues on appeal the lower court did not have subject matter jurisdiction over the counterclaim for adoption because no sworn statement of all property owned by the children was attached as required by § 93-17-3. Although W.D.H. did not direct the lower court’s attention to the absence of the sworn statement of property, the chancellor’s reasoning as to the absence of Exhibits “A” and “B” to the counterclaim for ¿doption is applicable. The counterclaim specifically stated the “minor children do not own any real, personal or mixed property as set for [sic] in the Affidavit attached as Exhibit ‘C’.” Therefore, Exhibit “C” could have been attached to the counterclaim and later misplaced while in the clerk’s possession. Further, the sworn statement of property attached to the complaint for adoption filed by R.W.M. and W.D.H. was available to T.H. and S.H.
¶ 30. For the foregoing reasons, this assignment of error is without.
II. DID THE TRIAL COURT HAVE SUBJECT MATTER JURISDICTION TO GRANT TERMINATION OF THE PARENTAL RIGHTS OF W.D.H.?
¶ 31. According to W.D.H., the prayer for termination of W.D.H.’s parental rights was incidental to the prayer for adoption in the counterclaim filed by T.H. and S.H. Since the trial court lacked jurisdiction over the counterclaim, W.D.H. claims, it also did not have jurisdiction over the incidental prayer for termination of parental rights. Further, W.D.H. asserts Clarke County Chancery Court would not have been the proper venue for an independent claim for termination of her parental rights. This argument is moot in that this Court has found no statutory deficiency depriving the chancery court of jurisdiction over the counterclaim.
¶ 32. The original complaint for adoption was filed by R.W.M. and W.D.H. in the Chancery Court of Clarke County, where R.W.M. had resided for more than ninety days preceding the filing. W.D.H. concedes Clarke County was the proper venue for the adoption claim. T.H. and S.H. were compelled to file their counterclaim for adoption in response to the original adoption action. M.R.C.P. 13(a).
¶ 33. The trial was bifurcated at the request of W.D.H. and R.W.M. to require T.H. and S.H. to present evidence regard *193 ing the termination of parental rights prior to the offer of evidence regarding whether the minor children should be adopted by either R.W.M or T.H. and S.H. Following the termination hearing and during testimony regarding the adoption of the minor children by R.W.M., R.W.M. withdrew her complaint for adoption.
¶ 34. The withdrawal of the complaint for adoption by R.W.M. did not divest Clarke County Chancery Court of jurisdiction over the counterclaim for adoption filed by T.H. and S.H. The termination of parental rights action was necessarily a part of the adoption proceedings.
M.R.C.P. 82(c) provides:
Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought. Whenever an action has been commenced in a proper county, additional claims and parties may be joined, pursuant to Rules 13, 14, 22 and 24, as ancillary thereto, without regard to whether that county would be a proper venue for an independent action on such claims or against such parties.
Whether the termination of parental rights was incidental to the adoption proceedings or an independent action is of no consequence. Clarke County Chancery Court retained subject matter jurisdiction over the counterclaim for adoption after the withdrawal of the original complaint for adoption by R.W.M. This assignment of error is without merit.
CONCLUSION
¶ 35. We are of the opinion the facts of this case are sufficient to support the conclusion that the natural mother’s parental rights should be terminated and that there was no abuse of discretion in ordering the adoption in this case over the objection of the natural mother. The final judgment of adoption of the Chancery Court of Clarke County is affirmed.
¶ 36. THE JUDGMENT OF THE CHANCERY COURT OF CLARKE COUNTY IS AFFIRMED. COSTS OF THIS PROCEEDING ARE TAXED TO CLARKE COUNTY.
McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, KING, PAYNE, and SOUTHWICK, JJ., concur.
IRVING and LEE, JJ, not participating.

. This pleading should be entitled "Counterclaim” pursuant to M.R.C.P. 13.