COBB, Justice,
for the Court:

STATEMENT OF THE CASE

¶ 1. On September 12, 1997, three-month-old A.L.B. (the child) was removed from the legal custody of the child’s par *325 ents, C.W.B. and R.B., and placed in the legal custody of the Tishomingo County Department of Human Services (DHS) by a Temporary Agreed Order of the Itawam-ba County Chancery Court. The child was in the physical care and custody of L.W., the child’s maternal grandmother, when DHS placed the child in a foster home. L.W. and the child’s paternal grandmother, R.M.R., both signed the Temporary Agreed Order placing the child in the custody of DHS.
¶ 2. It is unclear whether the child had been in L.W.’s care since birth, or how much, if any, time the child may have been in the care of R.M.R. The court awarded R.M.R. temporary custody of the child’s minor siblings, and granted both grandmothers reasonable visitation rights with the child, solely at the discretion of DHS.
¶ 3. On April 6,1998, L.W., joined by her husband, C.E.W., filed a complaint seeking to adopt the child, naming the parents and DHS as parties defendant. No answer or other response was filed, and on June 22, 1998, counsel for L.W. obtained an order setting the case for hearing on August 19, 1998. Two days before the matter was set for hearing, DHS filed a Motion to Dismiss, to which L.W. filed a written response citing failure to give at least five days notice as required by the M.R.C.P. 6(d). The record is silent as to whether a hearing was held as scheduled on August 19 or any other date, but the court entered a two-sentence order dismissing the Complaint for Adoption on December 8, 1998. Aggrieved by the trial court’s decision, L.W. appeals.

STATEMENT OF FACTS

¶ 4. A.L.B. was born to C.W.B. and R.B. on June 11, 1997. They apparently left the child with L.W. soon after birth, and went to Milan, Tennessee. At the age of three months, the child was placed in temporary custody of DHS. On April 6, 1998, L.W., joined by her husband, C.E.W., filed a complaint for adoption, stating that the child’s parents had abandoned and deserted the child. Attorney Joey Cobb was appointed the child’s Guardian Ad Litem. The chancellor dismissed the complaint without making any findings of fact or conclusions of law upon which his decision was based. The record is devoid of any communication from the guardian ad litem, and there is no transcript of any proceedings which may have occurred.
¶ 5. L.W. appealed, raising the following three issues:
I. WHETHER THE DEPARTMENT OF HUMAN SERVICES FAILED TO PROVIDE THE NOTICE AS REQUIRED BY RULE 6 OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE, WHEN IT FILED A MOTION TO DISMISS ON AUGUST 17, 1998, AND SAID CAUSE WAS SCHEDULED FOR HEARING ON AUGUST 19,1998.
II. WHETHER THE DEPARTMENT OF HUMAN SERVICES MUST GIVE CONSENT PRIOR TO THE ADOPTION OF GRANDCHILDREN BY THE MATERNAL GRANDPARENT.
III. WHETHER THE FAILURE TO ATTACH A DOCTOR’S CERTIFICATE WITH THE PETITION FOR ADOPTION IS GROUNDS FOR DISMISSAL, WHERE THE CERTIFICATE WAS FILED WITHIN TWO DAYS.
¶ 6. Without cross-appealing, DHS attempts to raise a fourth issue, as follows:
IV. WHETHER L.W. PROVIDED TISHOMINGO COUNTY DEPARTMENT OF HUMAN SERVICES PROPER NOTICE AS REQUIRED BY RULE 4 OF MISSISSIPPI RULES OF CIVIL PROCEDURE WHEN SHE FILED HER COMPLAINT FOR ADOPTION ON APRIL 6, 1999.
¶ 7. Finding merit to issues I, II and III, we reverse and remand this case to the Itawamba County Chancery Court for fur *326 ther proceedings consistent with this opinion.

STANDARD OF REVIEW

¶ 8. The lower court dismissed L.W.’s Complaint for Adoption based upon DHS’s Motion to Dismiss, which recited two reasons for dismissal: (1) that without DHS’s consent to the adoption, the adoption cannot be granted; and (2) that L.W.’s failure to comply with Miss.Code Ann. § 93-17-3 requires dismissal due to lack of subject matter jurisdiction. Both of these are issues of law. This Court conducts “de novo review on questions of law.” UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc., 525 So.2d 746, 754 (Miss.1987).

ANALYSIS

I. WHETHER THE DEPARTMENT OF HUMAN SERVICES FAILED TO PROVIDE THE NOTICE AS REQUIRED BY RULE 6 OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE, WHEN THEY FILED A MOTION TO DISMISS ON AUGUST 17, 1998, AND SAID CAUSE WAS SCHEDULED FOR HEARING ON AUGUST 19, 1998.
¶ 9. It is important to note that the Chancellor entered a two-sentence order[1] of dismissal without providing any finding of facts or conclusions of law. The record is devoid of any input from the guardian ad litem which would provide this Court with insight into the chancellor’s determination to dismiss the Complaint for Adoption. Furthermore, there is no transcript of any proceedings which may have occurred on the date the Motion to Dismiss was scheduled to be heard, or any other date. Other than the motion itself, there is simply no record which illuminates the Chancellor’s reasons for dismissal.
¶ 10. What is clear is that DHS failed to comply with the notice provisions as supplied by M.R.C.P. 6(d) which provides that “[a] written motion, other than one which may be heard ex parte, and notice of the hearing thereof, shall be served not later than five days before the time fixed for the hearing, unless a different period is fixed by these rules or by order of the court.” The notice of Motion and the Motion to Dismiss were served by mail on August 15, 1998, filed August 17, 1998, and delivered unannounced to L.W.’s attorney’s office at 5:00 p.m. on August 17, when the hearing was scheduled for 9:00 a.m. on August 19. This clearly provided L.W. with less than five days of notice, certainly not sufficient time to allow a proper response to the motion.
¶ 11. This Court has held that Rule 6(b) prohibits a trial judge from receiving documents which are not timely filed absent “excusable neglect.” Richardson v. AFAC-Mississippi Inc., 631 So.2d 143, 146 (Miss.1994). In the present case, DHS failed to give 5 days notice of the filing of the Motion to Dismiss, gave no reason for late filing, and did not request or obtain a court order shortening this period. Although not required, L.W. filed a response to the Motion to Dismiss, raising the defense of failure to timely file. No continuance was requested, and the record is devoid of any further reference to the Motion to Dismiss until the Order of Dismissal was filed on December 18, 1998. DHS contended in its brief that L.W.’s service of process was improper and that excused its compliance with Rule 6, but it offers no authority, case law or statutory, to support such an argument.
¶ 12. We find this assignment of error to be meritorious.
*327 II. WHETHER THE DEPARTMENT OF HUMAN SERVICES MUST GIVE CONSENT PRIOR TO THE ADOPTION OF GRANDCHILDREN BY THE MATERNAL GRANDPARENT.
¶ 13. We do not limit our analysis to whether DHS must consent prior to an adoption by a grandparent. Rather, we address the issue of whether the consent of DHS prior to any adoption of a child in DHS’s custody is mandatory.
¶ 14. DHS cites no case law on this issue on appeal. The memorandum brief attached to its motion to .dismiss in the lower court cited extra-jurisdictional case law interpreting statutory consent clauses.[2] While some of those eases do require the court to defer to the agency, they are largely driven by statutory language and facts of the case.
¶ 15. This Court has never held that DHS has exclusive control' over whether a minor may be adopted in the State ‘ of Mississippi. Yet DHS contends that absent its consent, there can be no adoption of a child who is in its custody. There simply is no such requirement. After a termination of parental rights, the custodial role of DHS is vital in the preservation or establishment of the minor’s well-being. DHS has a primary role in the service of the best interests of the child. The court relies on facts supplied by the agency and observes the nuances which provide a basis for determination of how the child’s interests will be best served. Together the court and DHS accomplish this service. Nevertheless, it is the court which is charged with the ultimate responsibility of the final determination' of what is in the best interests of the child. It is the court which directs the final disposition of the adoption.
¶ 16. DHS argues that it should have exclusive control over the adoption of children in its custody and that its policy manual should be controlling. But to allow it to be controlling would give DHS the right to “override” the chancellor’s decision concerning the adoption of a minor child. The statute simply does not provide for the court to be bound by DHS’s consent or the lack thereof. Miss.Code Ann. § 93-15-111 (1994) provides:
Should the court terminate the parental rights of the parents or only one (1) of the parents (if they both be living), then the court shall place the child in the custody of some suitable person, agency or institution, and such person, agency or institution shall have full power to enter a petition under section 93-17-5, consenting to adoption, and no further notice shall be given in the adoption proceeding to such parent or parents.
Miss.Code Ann. § 93-15-111 (1994). DHS misinterprets the permissive language in this statute to mandate DHS’s approval of any adoption brought before the court. While the statute gives the agency “full power to consent” to an adoption, it does not provide that such consent is mandatory. This Court has stated:
The law has given to our courts the most unbounded jurisdiction over minors. Fathers may be preferred to mothers-mothers to fathers, relatives to parents-or strangers to either, for the custody and care of minors, where the *328 interest of the child requires its exercise.
J.C. v. Natural Parents, 417 So.2d 529, 531 (Miss.1982) (emphasis added).
¶ 17. Clearly, when granted custody pursuant to Miss.Code Ann. § 93-15-111, DHS can consent to an adoption. There is no requirement that it must. This does not leave DHS without the authority or even responsibility to contest a petition, when it believes a custody arrangement, or an adoption by certain .persons, such as grandparents, would, not be in the best interest of the child. But the chancellor is given the responsibility of the final determination.
¶ 18. DHS asserts that it has a duty under Miss.Code Ann. § 43-15-13 (Supp. 1999) to be responsible for securing both termination of parental rights and then adoption for children entrusted to its care “by virtue of the conjunctive sentence: ‘... refer the child to the appropriate court for termination of parental rights and placement in a permanent adoptive home This language does not state that the agency’s responsibility preempts the chancellor’s right to determine the best interests of the child in an adoption.
III. WHETHER THE FAILURE TO ATTACH A DOCTOR’S CERTIFICATE WITH THE PETITION FOR ADOPTION IS GROUNDS FOR DISMISSAL, WHERE THE CERTIFICATE WAS FILED WITHIN TWO DAYS.
¶ 19. Miss.Code Ann. § 93-17-3(1994) states in pertinent part: “[t]he petition shall be accompanied by a doctor’s certificate showing the physical and mental condition of the child to be adopted”. Because there was no doctor’s certificate attached to L.W.’s adoption petition when it was filed, DHS argues that this was grounds for dismissal, relying, on the case of In Matter of Adoption of F.N.M., 459 So.2d 254 (Miss.1984), in which this Court held that “[wjhere applicants in an adoption proceeding failed to attach a doctor’s certificate and instead requested that the chancellor order that the child be examined, the jurisdictional requirements of § 93-17-3 were not met, regardless of the applicants’ good faith.” However, F.N.M. is clearly distinguishable, for there was no certificate in that case. In contrast, the record in the instant case includes a doctor’s certificate.' The certificate was dated August 8, 1997, signed by Dr. Raynard Fabianke, and stated that the child had been examined that day and found to be in good health. The certificate further stated the doctor’s opinion that there was nothing to suggest any problems concerning the child’s care. The certificate concluded that the child was receiving excellent care based upon the doctor’s assessment. Although L.W. did not file the certificate until the day after the hearing on the motion to dismiss was scheduled, it was made part of the record almost four months prior to the court’s order dismissing the case. We agree with L.W. that “it would seem that any complaints that the Appellee had concerning the lack of a doctor’s certificate had been cured by the filing, albeit late filing, of the doctor’s certificate on August 20,1998.”
¶ 20. In the case of In Matter of Adoption of R.M.P.C., 512 So.2d 702 (Miss.1987), this Court held that objection to the lack of a doctor’s certificate was something that could not be asserted some two years after the fact. Id. This suggests that a doctor’s certificate is not a jurisdictional requirement. See also In re J.D.H., 734 So.2d 187 (Miss.Ct.App.1999). Other jurisdictions are split as to whether a requirement such as this is a jurisdictional requirement. We find that the certificate meets, the statutory requirement. . The statute does not say the certificate must be attached at the time the petition is filed, nor does it state a time period within which the certificate must have been completed. Therefore, it is unnecessary to attempt to establish what the Legislature might have intended concerning, how current such a certificate should be. It would *329 be speculation to state, as does DHS, that Dr. Fabianke’s certificate “can hardly be considered a proper certificate” or that it “would have been impossible” for the certificate to “accurately inform” the court of the child’s physical and mental condition.
IV. WHETHER L.W. PROVIDED TISHOMINGO COUNTY DEPARTMENT OF HUMAN SERVICES PROPER NOTICE AS REQUIRED BY RULE 4 OF MISSISSIPPI RULES OF CIVIL PROCEDURE WHEN SHE FILED HER COMPLAINT FOR ADOPTION ON APRIL 6, 1999.
¶ 21. Rule 4(d)(5) of Mississippi Rules of Civil Procedure provides:
(d) Summons and Complaint: Person to Be Served. The summons and complaint shall be served together. Service by sheriff or process server shall be made as follows: (5) Upon the State of Mississippi or any one of its departments, officers or institutions, by delivering a copy of the summons and complaint to the Attorney General of the State of Mississippi.
¶ 22. L.W. served the Tishomingo County Department of Human Services, rather than the Attorney General.
¶ 23. Furthermore, Miss.Code Ann. § 93 — 17—5(1)(iii) (Supp.1999) states that:
... In addition to the above, there shall be made parties to any proceeding to adopt a child, either by process or by filing of a consent to the adoption proposed in the petition, the following: (iii) The agent of the county Department of Human Services of the State of Mississippi that has placed a child in foster care, either by agreement or by court order.
¶ 24. L.W. served the department itself and not the agent, as provided by the statute. However, DHS waived any objection to the sufficiency of the service of process by filing its Motion to Dismiss and not including any service of process objection in that motion. M.R.C.P. 12(g) & (h)(1). Further, DHS did not cross-appeal on this issue of service of process and thus is barred from raising it.

CONCLUSION

¶ 25. We reverse the judgment of the Itawamba County Chancery Court, and we remand this case to that court for further proceedings consistent with this opinion.
¶ 26. REVERSED AND REMANDED.
PRATHER, C.J., PITTMAN and BANKS, P.JJ., McRAE, SMITH, MILLS, WALLER and DIAZ, JJ., concur.

. The order states that "[t]his cause came on to be (sic) on the written motion of Defendant, Tishomingo County Department of Human Services to dismiss the Complaint of Adoption filed by the Plaintiff, Loretta Waddle; and the court being fully advised in the premises finds that said Motion is well-taken and is hereby granted. IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the instant Complaint for Adoption is hereby dismissed.”

. Dakota County Abstract Co. v. Richardson, 312 Minn. 353, 252 N.W.2d 124, 126-27 (1977) (A reviewing court must not substitute its judgment for that of the agency if the record supports the agency’s determination); State ex rel. Frederick v. District Court of Fourteenth Judicial Dist., 119 Mont. 143, 173 P.2d 626 (1946) (adoption petition properly dismissed for lack of jurisdiction where state welfare department had withheld its consent to the adoption); In re Norwood, 43 N.C.App. 356, 258 S.E.2d 869 (1979) (consent cannot be unreasonably withheld by agency); Children's Servs. Div., Dept., of Human Resources v. Zach, 18 Or.App. 288, 525 P.2d 185 (1974) (consent of the agency required before court can obtain jurisdiction); Lutheran Social Serv., Inc. v. Farris, 483 S.W.2d 693 (Tex.Civ. App.1972) (agency has authority to give or withhold consent necessary to enter judgment for adoption).