T.C. Summary Opinion 2002-156


UNITED STATES TAX COURT



LYNDELL SCOTT HEGWOOD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9398-01S.              Filed December 20, 2002.


Lyndell Scott Hegwood, pro se.

<u>Marshall R. Jones</u>, for respondent.


BEGHE, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue.  The decision to be entered is not
reviewable by any other court, and this opinion should not be
cited as authority.

Respondent determined a deficiency of $4,336 in petitioner's Federal income tax for 2000, attributable to respondent's determinations (1) that petitioner was required to file as single rather than as head of household, (2) that petitioner's claim to exemptions for three dependent children had not been substantiated, and (3) that petitioner was not entitled to the earned income credit. Of the deficiency, $2,585 is attributable to respondent's disallowance of the earned income credit.

The first two issues having been resolved by agreement in petitioner's favor, the issue remaining for decision is petitioner's right to the earned income credit. Although respondent has conceded that petitioner qualifies as head of household by reason of his maintaining a household that includes minor children who are his dependents, respondent continues to assert that petitioner does not have a "qualifying child" who is an "eligible foster child of the taxpayer" within the meaning of section 32(c)(3)(B)(i), as amended, effective for taxable years beginning after December 31, 1999, by the Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. 106-170, sec. 612(a), 113 Stat. 1917 (the 1999 Act).

Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Bay St. Louis, Mississippi.

Petitioner and the mother of the three dependent children have been living together for more than 10 years, and petitioner provides the primary support for the household, which includes the dependent children. Mississippi abolished common-law marriage in 1956, Miss. Code Ann. sec. 93-1-15(1) (1999), and the living arrangement of petitioner and the mother is illegal under Mississippi law, Miss. Code Ann. sec. 97-29-1 (1999); see also Davis v. Davis, 643 So. 2d 931 (Miss. 1994); Sullivan v. Stringer, 736 So. 2d 514 (Miss. Ct. App. 1999). Petitioner does not claim a dependency exemption for the mother, and correctly so. See Turnipseed v. Commissioner, 27 T.C. 758 (1957). However, petitioner asserts that his living arrangement with the children does not violate Mississippi law, and that continuation of this arrangement should be encouraged.

Petitioner has cared for the mother's children as his own and claimed them as his foster children since 1991. Petitioner asserts that the State of Mississippi accepts these children as his foster children, citing as evidence the high school record of one of the children showing the names of both petitioner and the mother as "Parent/Guardian" of the child in question, with the relationship between petitioner and the child labeled "F-Father". Petitioner also asserts that no one else claims the children as dependents or foster children for tax purposes, and that the

children's biological father has not seen them since 1990 and does not pay any child support.

Respondent's determination that for 2000 and later years none of the mother's children is or can be a "qualifying child" of petitioner is based on the section 32(c)(3) definition of "qualifying child", as amended by the 1999 Act. This definition requires that the taxpayer and the child satisfy the relationship test of subparagraph (B)(iii). Under this test, the child, if not a child or descendant of a child of the taxpayer under clause (i)(I) or a stepchild of the taxpayer under clause (i)(II), must be "an eligible foster child of the taxpayer" under clause (i)(III).[1]

"Eligible foster child" is defined by clause (i)(III) as an individual not defined in clause (i)(I) or (II) who:

> (I) is a brother, sister, stepbrother, or stepsister of the taxpayer (or a descendant of any such relative) or is <u>placed with the taxpayer by an authorized placement agency</u>, [Emphasis added.]

> (II) the taxpayer cares for as the taxpayer's own child, and

---

[1]Prior to enactment of the 1999 Act, section 32(c)(3)(B)(iii) simply defined an "eligible foster child" as an individual not described in clause (i)(I) or (II) who--

> (I)  the taxpayer cares for as the taxpayer's own child, and

> (II)  has the same principal place of abode as the taxpayer for the taxpayer's entire taxable year.

(III) has the same principal place of abode as the taxpayer for the taxpayer's entire taxable year.

Respondent acknowledges that petitioner cares for the children in question as his own and that those children and petitioner have the same principal place of abode.

Petitioner acknowledges that the children have not been "placed with the taxpayer by an authorized State agency". Indeed, there was an intimation at trial that petitioner and the mother view as unfair the refusal or failure of the Mississippi Department of Human Services to place the children with petitioner as his foster children. The Court is left with the impression that the Mississippi Department of Human Services has not placed the children with petitioner as his foster children because of the technical illegality of petitioner's living arrangement with the mother.

With the change in section 32(c)(3) that became effective for the taxable year, petitioner took the return position, after discussion with the mother, who is the sole custodial parent, that she was authorized to "place" the children with petitioner as his foster children. Although there is no documentary evidence or testimony in the record that the mother has "placed" any of the children with petitioner as their foster father, we will assume for purpose of argument that she has attempted to do so.

Petitioner and the mother have not married for economic reasons. They explain that if they were to marry, the mother would be disqualified from receiving certain prescription drug benefits she is currently entitled to.

The Court has looked for legislative history to explain the purpose served by the more restrictive definition of "foster child" provided by the 1999 Act.

In the Joint Committee Print of the Description of Revenue Provisions Contained in the President's Fiscal Year 2000 Budget Proposal prepared by the Staff of the Joint Committee on Taxation (Feb. 22, 1999) (hereinafter, the Joint Committee Print), section 412(a) of the 1999 Act is classified under "Miscellaneous Revenue-Increase Provisions", and is captioned as a provision to "Simplify foster child definition under the earned income credit". In the absence of hearings and reports by the House Ways and Means Committee and the Senate Finance Committee, the Joint Committee Print is the only source that has come to the Court's attention that sheds any light on the purpose of section 412(a) of the 1999 Act.[2] Although respondent suggests the Joint Committee Print "is probably not to be considered 'legislative history' in the strict sense of the term", it was provided to the members of the House and Senate for their reference before

---

[2]The cursory description of sec. 412(a) of the 1999 Act in the conference report provides no help. See H. Conf. Rept. 106-478, at 61 (1999).

Congress enacted the 1999 Act; it is therefore part of the history of the legislation.  See <u>Robinson v. Commissioner</u>, 119 T.C. 44, 73 (2002).

The description of section 412(a) of the 1999 Act in the Joint Committee Print at 326 indicates that placement by an "authorized placement agency" should be interpreted as placement "by an agency of a State or one of its political subdivisions or by a tax-exempt child placement agency licensed by a State".  The Joint Committee Print goes on to state that "some advocates" of the new provision believe it would:  "(1) reduce potential abuse by tax cheats; (2) prevent unintentional errors by confused taxpayers; and (3) provide better guidance to the IRS when investigating questionable EIC claims."  According to the Joint Committee Print, critics of the proposal attacked its adverse effect on "legitimate family living arrangements" and stated that it would not completely simplify the foster child definition, because section 32(c)(3)(B)(iii)(II) retains the subjective test that the individual must be cared for "as the taxpayer's own child".

To summarize, other than what may be inferred from the provision's classification as a "Revenue-Increase" provision in the Joint Committee Print, the main purposes of its enactment appear to have been (1) to reduce unintentional errors by taxpayers by simplifying to some extent the foster child

definition, (2) to increase taxpayer compliance by reducing intentionally improper foster child claims, and (3) to provide the Internal Revenue Service with a clear subset of claimed foster children who fit within the definition of "eligible foster child".

Applying these considerations to the facts of the case at hand, there appears to be no likelihood of unintentional or intentional error in petitioner's claim, in the sense that there is no reasonable possibility that anyone else is claiming the children as dependents; in fact, they are petitioner's dependents, as respondent concedes. Furthermore, both preexisting requirements for qualification as a foster child--care for the children as one's own child and the sharing of the principal place of abode for the entire year--continued to be satisfied during the taxable year in issue.

Notwithstanding these considerations, the new provision of the 1999 Act is clear on its face and leaves no room for interpretation in its application to the case at hand. The children have not been placed with petitioner by an agency of the State of Mississippi or one of its political subdivisions or by a tax-exempt child placement agency licensed by the State of Mississippi, nor by a Mississippi Chancery Court. See LW v. C.W.B., 762 So. 2d 323 (Miss. 2000). Nothing in the Joint Committee Print or the 1999 Act as written suggests the new rule

is to be disregarded where the State agency having jurisdiction has refused or failed to make the placement because it disapproves what in a majority of other States would be considered a "legitimate family living arrangement". Neither does the Court believe it has any proper standing to base its decision on its disagreement with the State agency's failure to draw a compassionate distinction between the technical illegality under Mississippi law of petitioner's living arrangement with the mother and the social benefit to be gained from providing additional encouragement of his continued support and surrogate fatherhood of the children.

Although respondent, in an effort to help petitioner, suggested at trial that petitioner might be arguing the new requirement is unconstitutional as applied to him because of its interaction with Mississippi law and administrative practice, petitioner has made no such argument. Neither the record in this case nor the arguments of the parties provide any basis for an inquiry by the Court into the issue of constitutionality. See Ashwander v. TVA, 297 U.S. 288, 346-348 (1936) (Brandeis, J., concurring).

The Court is constrained to sustain respondent's determination that petitioner is not entitled to the earned income credit for the year 2000.

To give effect to the foregoing and respondent's concessions,

*Decision will be entered*

*under Rule 155.*
